REMIS THOMAS AND WIFE, NAOMI FUQUAY THOMAS v. WILLIAM DAVID PICKARD

No. 7311DC137

(Filed 11 April 1973)

Infants § 9— right of surviving parent to full custody of minor — effect of changed circumstances on consent judgment

Trial court erred in granting custody of minor child to plaintiff maternal grandparents for one week-end each month where the evidence tended to show that defendant and the child's stepmother were the fit and proper persons to have absolute custody of the child, and a consent judgment signed by the father immediately after the death of the child's mother giving the maternal grandparents custody of the child for two week-ends per month would not affect the father's right to full custody since the father had remarried and established a new home fifty miles from that of plaintiffs subsequent to the signing of the judgment.

APPEAL by defendant from *Morgan, Chief District Judge;* judgment entered 20 July 1972 in LEE County.

Defendant, William David Pickard, was married to Jennie Margaret Thomas (daughter of plaintiffs) on 3 May 1968 and lived with her thereafter until he was drafted into the army on 16 August 1968. Because of his military duty defendant lived with his wife only intermittently until he left for Korea under military orders in December 1968.

The child, Sherry Renee Pickard, who is the subject of this controversy, was born on 28 May 1969. Thereafter, in the Spring of 1969, defendant's wife became ill with cancer. Through intervention by the Red Cross defendant was returned to Fort Bragg, North Carolina, on or about 11 July 1969. On 10 October

---

Thomas v. Pickard

---

1969 defendant was discharged from the army because of his wife's illness.

Defendant's wife died on 7 January 1971. On 16 January 1971 defendant was served with notice of this action by plaintiffs to obtain custody of defendant's daughter. On 28 January 1971 defendant signed a Consent Order whereby plaintiffs were granted temporary custody of defendant's daughter on two weekends each month.

Since the entry of the Consent Order defendant (on 1 August 1971) remarried and moved to a home near Siler City. Defendant and his second wife, Sandra Johnson Pickard, are both regularly employed, and defendant's second wife's mother, Mrs. Hugh Johnson, cares for defendant's daughter during the daytime.

On several occasions the child has been ill and defendant did not take her for her weekend stay with plaintiffs. Because of defendant's refusal to allow his daughter, because of her illness, to visit with plaintiffs, they caused defendant to be cited for contempt of court. The judge found that defendant was not in contempt. Following this, defendant petitioned the Court to amend the 28 January 1971 Consent Order so as to award to defendant exclusive custody of his daughter.

Judge Morgan conducted hearings on 9 March 1972 and 12 May 1972 upon defendant's petition. Judge Morgan found facts substantially as summarized above, and in addition made the following pertinent findings:

"5. That at the request of defendant and his wife, a psychiatric evaluation of the said Sherry Renee Pickard was accomplished during December 1971 and January 1972 by Dr. Robert Ilaria, a resident in child psychiatry at North Carolina Memorial Hospital in Chapel Hill, North Carolina; that Dr. Ilaria testified that the child was evaluated over a period of three weeks, that her behavior was consistent with what would not be unlikely responses in a child of her age caught in a situation where there were serious conflicts between parent and grandparents, as the Court found in this case; that the child did not, however, demonstrate clinically direct evidence of psychiatric disturbances during the evaluation, but there is likelihood that with time, psychic stress will become manifest from the then current

situation; that he recommended that visiting by the grand-parents should be by voluntary extension of the parents and that visiting in the grandparents' home be with the parents present rather than having her left there, at least until the behavioral changes which he described had abated; and that such behavioral patterns would, in his opinion, abate within about three or four months; that the recommendations contained in said report were not only those of Dr. Ilaria but also those of a panel of psychiatrists, which included Dr. David F. Freeman, the Chief of the Division of Child Psychiatry at said hospital."

"10. That there have been material changes in conditions since the entry of the Consent Order or Judgment of Judge Godwin on January 28, 1971, among which changes are the following:

(1) The defendant has remarried and has reestablished a home within which to rear his minor daughter, (2) that said new home is about 50 miles from the plaintiffs' residence instead of being close to the plaintiffs as was his former home, (3) that since defendant's remarriage relations between defendant and plaintiffs have become tense and more strained because of the defendant's being deprived of full-time custody of his own child."

The judge then ordered as follows:

"ORDERED, ADJUDGED AND DECREED:

1. That plaintiffs, defendant and defendant's wife, Sandra Johnson Pickard, are fit and proper persons to have the care, custody and control of Sherry Renee Pickard and the primary custody of said child is placed with defendant and his wife, who shall be responsible for her care and maintenance; and plaintiffs are hereby granted partial custody of said minor child and are authorized to pick her up at the home of defendant at one o'clock p.m. on the fourth Saturday of each month, beginning with the fourth Saturday in July 1972, and return her to the home of defendant by five o'clock p.m. on the next day and during such periods plaintiffs shall be responsible for her care and maintenance; when the holidays of Christmas and Easter fall on a weekend when the child would, under this Order, go to visit in the home of plaintiffs, or when illness

of said child, duly certified by a licensed physician, shall prevent such child from visiting in the home of plaintiffs, she shall remain with defendant and the scheduled visitation shall be postponed until the next weekend and the following month shall be resumed on the fourth weekend as herein directed.

2. Plaintiffs and defendant shall see that said child is properly cared for subject to proper influences and regular in her church and church school attendance while she is in their respective custody.

3. In the event of serious illness of said child the party with whom she is residing shall promptly notify the other; during such illness the child shall either remain with or be returned to defendant's custody, and during such illness plaintiffs shall be permitted to visit said child in the home of defendant and his wife.

4. This cause is retained for the further order of the Court."

From the entry of the order, insofar as it grants partial custody to plaintiffs, defendant appealed.

*Pittman, Staton & Betts, by William W. Staton and R. Michael Jones, for plaintiffs.*

*Harold W. Gavin for defendant.*

BROCK, Judge.

As a general rule at common law and under our own decisions, parents have the legal right to the custody of their children. *Shackleford v. Casey,* 268 N.C. 349, 150 S.E. 2d 513. "This right is not absolute, and it may be interfered with or denied but only for the most substantial and sufficient reasons, and is subject to judicial control only when the interests and welfare of the children clearly require it." *James v. Pretlow,* 242 N.C. 102, 104, 86 S.E. 2d 759, 761; *accord, In re Jones,* 14 N.C. App. 334, 188 S.E. 2d 580.

A court should not take a child from the custody of its parents and place it in the hands of a third person except upon convincing proof that the parent is an unfit person to have custody of the child or for some other extraordinary fact or circumstance. 3 Lee, N. C. Family Law, Custody of Children,

---

---

§ 224, p. 25. "(A) natural parent, father or mother, as the case may be, who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against all other persons, . . . such as other relatives, including grandparents . . . . " (Citation omitted). *Shackleford v. Casey, supra; see Child Custody—Father or Grandparent,* 25 A.L.R. 3d 7.

In this case there is no evidence that it would be to the best interest of the child that the grandparents should be awarded custody or partial custody of the child; nor has there been such a determination by the court. All of the evidence and findings point to the father and the stepmother of the child as being the fit and proper persons to have the care and custody of the child. There is absolutely no suggestion by anyone that the child's interests would not be served best by absolute custody in the father.

The fact that the grandparents love the child is no cause to give them a *legally enforceable right* to have the child visit with them one weekend a month, or any other time. It is surely to be desired that the child will be able to enjoy the love and affection of her grandparents and that they in turn will be able to enjoy the love and affection of the child. But this desire does not justify interfering with the proper and normal parent-child relationship.

We do not consider the consent of the father in the 28 January 1971 Judgment to be an impediment to his now having full and complete custody of his daughter. At that time he had been served with notice of a custody hearing within ten days of his wife's death, and the hearing was only twenty-one days after her death. Under such circumstances there is small wonder that he was willing to consent to partial custody by the grandparents, although he may not have been well advised.

The order appealed from is reversed, and this cause is remanded to the District Court for a new hearing on the defendant's petition.

Reversed and remanded.

Judges VAUGHN and GRAHAM concur.