IN THE MATTER OF ROBERT RANDOLPH CUSSON

No. 7814DC1126

(Filed 16 October 1979)

1. Infants § 4; Parent and Child § 6.3— neglected child—sufficiency of evidence

In a proceeding instituted by a county department of social services to obtain custody of a child from its mother, the evidence was sufficient to support a finding that the child was a "neglected child" within the meaning of G.S. 7A-278(4), *i.e.*, that he did not receive proper care or discipline from his mother, or lived in an environment injurious to his welfare, or was not provided necessary medical care, where it tended to show that the mother would not let a caseworker come to her home; her home was cluttered and dirty; she said she sometimes carried a knife or gun; she sometimes kept the child from therapeutic daycare, saying he was ill; she permitted the child to stay up so late that he was too tired to go to daycare in the morning; she talked about being involved with the CIA and Mafia in front of the child and often called the police with unfounded complaints; she cancelled many appointments with her psychiatric therapist; the child was emotionally disturbed; and most of the child's problems were the result of his environment.

**2. Parent and Child § 6.3— proceeding to determine if child neglected—guardian ad litem—continuance for tests**

    In a proceeding instituted by a county department of social services to obtain custody of a child from its mother on the ground that the child is a "neglected" child, the trial court did not err in appointing a guardian ad litem for the child after G.S. 7A-283 became effective or in allowing a continuance of the hearing for the purpose of obtaining additional tests of the child and his relationship with his mother.

**3. Parent and Child § 6— overcoming presumption of parent's right to custody**

    The presumption that parents have a natural and legal right to the custody, control, companionship, and upbringing of their children is overcome when the evidence shows by convincing proof that the best interest of the child would be served by removing it from its parents.

APPEAL by respondent from *Read, Judge.* Order entered 28 June 1978 in District Court, Durham County. Heard in the Court of Appeals 30 August 1979.

On 31 October 1975, District Court Judge Read entered an order awarding the custody of Robert Randolph Cusson, aged two, to his mother, Susan Zehmer Cusson. This order also required that a plan of evaluation, counselling and treatment be established and carried out for the child and his mother. The medical doctors, psychologists, psychiatrists and counsellors involved in the program were to make periodic reports in writing to the court. The Durham County Department of Social Services was ordered to monitor the care and development of the child, perform necessary inspections, investigations, supervision and counselling, and make reports to the court every three months. The cause was retained for further orders.

The Department of Social Services filed a petition for custody of the child on 31 May 1977, alleging the child was neglected and endangered because of the psychotic state of his mother. The court issued an immediate custody order placing Robert with the Department of Social Services pending a hearing.

A hearing on the petition was commenced on 3 June 1977 and at the close of petitioner's evidence, respondent moved to dismiss the proceeding and that she be granted custody of Robert. This was denied and after all parties presented evidence, an order was entered 9 June 1977 continuing the matter until 16 June 1977 and ordering that Ronald Y. Cusson, Robert's father, be made a party.

Custody was continued with the Department of Social Services. After further hearing commencing on 16 June 1977, the court entered an ex parte order 27 September 1977 appointing John Woodson, attorney, as guardian ad litem for Robert pursuant to N.C.G.S. 7A-283.

On 4 November 1977 Woodson moved for additional testing of Robert to provide information concerning the present relationships between Robert and his mother and his foster parent. This motion was allowed over Susan Cusson's objection and custody was continued with the Department of Social Services.

Hearings were resumed 9 March 1978 and at the conclusion the court denied Susan Cusson's motion for dismissal of the proceeding and for custody of her child and entered an order finding facts, making conclusions of law and continuing custody with the Department of Social Services of Durham County. Respondent, Susan Cusson, appeals.

*Thomas Russell Odom for petitioner appellee.*

*North Central Legal Assistance Program, by Charles A. Bentley, Jr., for respondent appellant.*

MARTIN (Harry C.), Judge.

[1] Respondent first contends the court erred in denying her motion to dismiss the proceeding at the close of petitioner's evidence at the 3 June 1977 hearing. The present controversy was commenced by the filing of a juvenile petition pursuant to N.C.G.S. 7A-281. A hearing on such petition shall be a "simple judicial process" to determine whether the conditions alleged exist and to make an appropriate disposition to achieve the purposes of the statute. N.C. Gen. Stat. 7A-285.

In testing the sufficiency of the evidence at the close of petitioner's evidence, the standard is whether there is substantial evidence to support the allegations of the petition, viewing the evidence in the light most favorable to petitioner, and giving petitioner the benefit of every reasonable inference to be drawn from the evidence. *Price v. Tomrich Corp.*, 275 N.C. 385, 167 S.E. 2d 766 (1969); *Anderson v. Carter*, 272 N.C. 426, 158 S.E. 2d 607 (1968).

Upon review of the evidence in the light of this standard, it shows: Mrs. Cusson would not let the caseworker come to her home; her home was cluttered and dirty; she said she sometimes carried a gun or knife; she sometimes kept Robert from therapeutic daycare, saying he was ill; she lets Robert stay up so late he is too tired to go to daycare in the morning; she talks about being involved with the CIA and Mafia in front of the child. Dr. Frothingham, professor of pediatrics at Duke Medical Center, testified Robert was perhaps emotionally unhealthy; Mrs. Cusson's behavior was bizarre, she talked in many different foreign languages, she came to his office dressed in a "romper suit." She cancelled many appointments with her psychiatric therapist; she often called the police about unfounded complaints. In the opinion of Dr. Anderson, a child psychologist, Robert has not developed emotionally beyond the first two years and is a very disturbed child; he needs a structured, consistent environment. Dr. Harris, a child psychiatrist, testified ninety percent of Robert's problems were the result of his environment and that he needed to be removed from his mother's custody on a permanent basis.

We hold this evidence was sufficient to overcome the motion to dismiss. At that stage of the trial, the evidence would support a finding that Robert was a "neglected child" within the meaning of N.C.G.S. 7A-278(4), i.e., that he did not receive proper care or discipline from his mother, or lived in an environment injurious to his welfare, or was not provided necessary medical care.

[2] The trial court did not err in appointing the guardian ad litem for Robert or in allowing a continuance of the hearing for the purpose of obtaining additional tests of Robert and his relationship with his mother. The statute requires the court to appoint a guardian ad litem for the child where it is alleged he is a "neglected child." N.C. Gen. Stat. 7A-283. Although this provision of the law was passed effective 26 September 1977, after this proceeding was instituted, the order was entered on 27 September 1977 and was clearly within the authority of the court. In order for the guardian ad litem to carry out his duties under the statute, it was necessary that the court continue the hearing. The granting of the guardian ad litem's motion for additional tests was within the sound discretion of the court. N.C. Gen. Stat. 7A-286(6). After all, the court was attempting to determine what

is in the best interest of the child. It is the duty of the court to give each child before it such attention, control and oversight as is in the best interest of the child and the state. *In re Eldridge*, 9 N.C. App. 723, 177 S.E. 2d 313 (1970).

[3] Last, respondent argues the court erred in concluding she was not a fit and proper person to have custody of her son. In North Carolina the law recognizes a presumption that parents have a natural and legal right to the custody, control, companionship and bringing up of their children. *Tucker v. Tucker*, 288 N.C. 81, 216 S.E. 2d 1 (1975); *In re McMillan*, 30 N.C. App. 235, 226 S.E. 2d 693 (1976). *See Quilloin v. Walcott*, 434 U.S. 246, 54 L.Ed. 2d 511 (1978). This presumption is not conclusive and absolute. *Tucker v. Tucker, supra; In re McMillan, supra.* Where the evidence shows by convincing proof that the best interest of the child would be served by removing it from the custody of its parents, the presumption is overcome. *Thomas v. Pickard*, 18 N.C. App. 1, 195 S.E. 2d 339 (1973). The North Carolina Supreme Court in 1895 adopted this writing of Chancellor Kent:

> "The father, and on his death, the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural protectors, for maintenance and education. But courts of justice may in their sound discretion and when the morals or safety of interests of the children strongly require it, withdraw the infants from the custody of the father or mother and place the care and custody of them elsewhere."

*Latham v. Ellis*, 116 N.C. 30, 33, 20 S.E. 1012, 1013 (1895). We hold the evidence in this case rises to the standards required to remove the child from the custody of respondent. *Tucker v. Tucker, supra; Latham v. Ellis, supra; Thomas v. Pickard, supra.*

The welfare and best interest of the child is always to be treated as the paramount consideration, to which even parental love must yield. *Wilson v. Wilson*, 269 N.C. 676, 153 S.E. 2d 349 (1967). Although the evidence is in part conflicting, we find there is substantial, convincing evidence to support the court's findings of fact and conclusions of law. The court, guided by the "polar star" of the best interest and welfare of Robert, ordered, in its discretion, that he be removed from the custody of respondent. That action by the patient and able trial judge is

Affirmed.

Judges MARTIN (Robert M.) and WEBB concur.