IN RE MASHBURN

No. COA02-1547

(Filed 3 February 2004)

**1. Evidence— hearsay—report of abuse—nonhearsay purposes—not used in findings**

Testimony by a county DSS employee about a report containing statements by a child concerning alleged sexual abuse of her by her stepfather did not constitute inadmissible hearsay in a child abuse proceeding against the child's mother and stepfather where the testimony was admitted to explain the origin of the DSS investigation and to rebut the contention that the child's allegations were fabricated. Furthermore, even if testimony by the witness that the alleged acts occurred "multiple times" constituted impermissible hearsay, the admission of this testimony was not prejudicial because the trial court did not rely thereon in making its findings and conclusions.

**2. Evidence— threat to victim—hearsay—other evidence—not prejudicial**

Testimony by an employee of the county DSS about a threat to a child sexual abuse victim if she spoke of the abuse was hearsay, but was not prejudicial because there was other substantial evidence of the abuse and neglect.

**3. Evidence— hearsay—not considered for truth of matter**

A hearsay statement regarding the sexual abuse of a child was not considered for the truth of the matter, but to provide context and history to the DSS interaction with the abuser.

**4. Evidence— hearsay—sexual abuse of another—corroboration**

Testimony by a DSS investigator from another county relating a granddaughter's statements about sexual abuse of her by her grandfather was not inadmissible hearsay but was properly admitted for corroboration in a proceeding for the abuse of the grandfather's stepdaughter by the grandfather and the child's mother.

**5. Evidence— hearsay—medical diagnosis—ordinary course of business**

The testimony of a pediatrician about a child sexual abuse victim was admissible under the medical diagnosis and ordinary course of business exceptions to the hearsay rule.

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

**6. Evidence— hearsay—statements to mental health professional**

Statements of child sexual abuse victims to a mental health professional were made for the purpose of diagnosis and treatment and were admissible.

**7. Child Abuse and Neglect— sufficiency of evidence**

The evidence of neglect and abuse was sufficient to deny a motion to dismiss.

**8. Child Abuse and Neglect— dispositional evidence—admitted at adjudication—one set of findings**

There was no prejudicial error from the receipt of dispositional reports and testimony during a hearing to adjudicate the abuse and neglect of children. There was substantial evidence upon which the court could conclude that the children were abused and neglected, and the court used one set of findings to support both the adjudication and dispositional orders.

**9. Child Abuse and Neglect— expert testimony—credibility of child**

Expert testimony about whether sexual abuse was likely to have occurred did not improperly bolster the credibility of the minor child. Neither doctor testified that the abuse in fact occurred or that the child was being truthful, there was no showing that the court did not understand the difference between testimony that symptoms were present and testimony that abuse occurred, and there was no showing that the court thought that the testimony bolstered the child's credibility.

**10. Evidence— expert testimony—foundation**

There was a proper foundation for medical testimony in a child abuse and neglect case.

Judge TYSON concurring in part and dissenting in part.

Appeal by Margaret and Paul Mashburn from Adjudication and Dispositional Order entered 25 June 2001 by Judge Marvin Pope in District Court, Buncombe County. Heard in the Court of Appeals 9 September 2003.

*Peter Wood for Margaret Mashburn.*

*Paul Pooley for Paul Eugene Mashburn.*

*Judy N. Rudolph for the Guardian Ad Litem.*

*John C. Adams for the Department of Social Services.*

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

WYNN, Judge.

This appeal arises from the trial court's order finding two children, a ten-year-old male and a fifteen-year-old female, were abused and neglected by their parents—Margaret Mashburn (natural parent of both children) and Paul Eugene Mashburn (step-parent of the female child and natural parent of the male child). In her appeal, Margaret Mashburn argues the trial court erred by admitting hearsay testimony and denying her motion to dismiss. In his appeal, Paul Mashburn argues the trial court erred by considering dispositional reports and testimony during the adjudication hearing, and admitting improper expert opinion testimony. After careful review, we affirm.

In its Order, the trial court found "that [the female child] disclosed that Paul Mashburn committed a sexual act on her." The trial court further found "that Paul Mashburn denies the sexual abuse of [the female child]; confirmed sexual allegations made in Arkansas to which he pleaded *nolo contendre*[1]; . . .[and] admitted that he used a paddle on the bottoms of [the male child's] feet as a discipline measure" when the child was about five years old. The trial court further found: "When Margaret Mashburn was told of the sexual abuse of [the female child] during a meeting at the Buncombe County Department of Social Services, she slammed her hand down on the table; denied any abuse; and, stated that [the female child] has been lying for years about abuse."

In its factual findings, the trial court fully incorporated the children's child medical examinations, in which Dr. Cynthia Brown opined "that it is highly likely that the [female child] was sexually abused." During one examination, Dr. Brown detected in [the female child] "a bacterial infection that was likely the result of a sexual act [but that] penetration is not required for a vaginal infection such that [the female child] presented."

The medical examination revealed that the male child was "reluctant to have a genital examination, but disclosed that he was spanked with a black paddle [on the bottoms of his feet] by Paul Mashburn."

The trial court also incorporated the report of the children's therapist, Dr. Rusty Harris who testified that "[the male child] . . . is three years developmentally disabled . . . that [he] soils his

---

1. The Court refused to consider reports regarding the Arkansas plea, but did take note of an additional, unrelated case against Paul Mashburn pending in Yancey County regarding his alleged abuse of his grandchildren.

pants after visits with his mother[2] . . . and that it is not in [his] best interest to be returned to the home because there is no acknowledgment by the parents of wrongdoing in the harsh discipline they inflicted on the child."

As to the female child, Dr. Harris testified, and the trial court found as fact that "[the female child] displays sexually reactive behaviors . . . that it is not in [her] best interest to be returned to the home as Margaret Mashburn does not believe the abuse occurred and cannot protect the child from further abuse by Mr. Mashburn."

Based on these and other facts, the trial court concluded, as a matter of law, that "[the female child] is a physically and sexually abused and neglected child pursuant to N.C.G.S. § 7B-101(1)(15) in that [she] was sexually abused by Paul Mashburn . . . the child's mother was aware of previous allegations of sexual abuse of [the female child] and did not protect the child from further abuse; the child did not receive the proper care and supervision from her mother and lived in an apartment injurious to her welfare due to harsh discipline and sexual abuse."

The Court similarly found as a matter of law that the male child "is a physically abused and neglected child . . . in that; discipline with a paddle on the sole's of a child's feet is most inappropriate and cruel punishment; that he did not receive proper care and supervision from his mother and lived in an environment injurious to his welfare due to harsh discipline by his mother and Paul Mashburn and he lived in a home where his sibling had been sexually abused by Paul Mashburn."

The trial court concluded that since "continuation of the minor children in the home would be contrary to the welfare of the minor children; the children's placement and care are the responsibility of the Buncombe County Department of Social Services," which it relieved of reunification responsibilities for either child with Paul Mashburn and the female child with Margaret Mashburn.

From these factual and legal conclusions and the resulting removal of both children from the care of the custodial parents, Margaret and Paul Mashburn, both parents appeal.

---

2. "The trial court found that Ms. Mashburn informed her son, during one visit, that she loved him so much that when she found out that he would not be returning to the home soon, she went into her bedroom, put a gun to her head, and that the only thing that prevented her from being successful was intervention by Paul Mashburn."

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

## I. Margaret Mashburn's Appeal

[1] In her appeal, Margaret Mashburn first argues the trial court erroneously permitted Linda Sweat, Debbie McKinney, Dr. Cynthia Brown and Rusty Harris, Ph.D., to testify about the children's hearsay statements describing instances of sexual abuse, in violation of N.C. Gen. Stat. 8C-1, Rule 802 (providing that the out-of-court statements of a declarant, made for the truth of the matter asserted, are inadmissible hearsay).

Margaret Mashburn first contends the following testimony was improperly admitted over counsel's objection because it contained inadmissible hearsay:

> The report was that the child had allegedly been molested by her stepfather . . . . There were allegations that she might have been pregnant, so I went to the school and interviewed her. She subsequently disclosed to me that she had been molested on a night in November . . . of 2000 . . . . She had woken up during the night to find Paul Mashburn on top of her, his pants down around his knees, her nightgown up around her stomach, and that he was rubbing his genitals against her pubic area.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. However, out of court statements offered for purposes other than to prove the truth of the matter asserted are not considered hearsay." *State v. Carroll*, 356 N.C. 526, 542, 573 S.E.2d 899, 910 (2002).

The record on appeal shows that Linda Sweat of the Buncombe County DSS, investigates allegations of child abuse by reading abuse and neglect reports and interviewing the parties involved in the report. On March 2, 2001, Ms. Sweat reviewed a report about the children at issue and commenced an investigation into the allegations by interviewing the female child at her school. Thus, while the statements at issue were made by an out-of-court declarant—the female child—such statements would be outside the scope of Rule 802 if offered for a non-hearsay purpose. Therefore, Ms. Sweat's description of the report, containing the female child's description of the stepfather's abuse of her, would not constitute inadmissible hearsay because it explained why the Buncombe County DSS commenced an investigation and was also offered to rebut the implication that the female child fabricated abuse allegations.

Margaret Mashburn also contends the following testimony elicited from Ms. Sweat was improperly admitted because it contained inadmissible hearsay:

Q: All right. Did that report indicate how often the alleged acts occurred?

A: No, but in the course of the investigation I found that it happened multiple times.

Q: All right. Did your investigation reveal whether or not either minor child had been threatened if they disclosed these events?

A: Yes.

Q: All right. What was the nature of that?

A: What I understood was that [the female child] was told that she would be beaten to death . . . Paul Mashburn told her that.

As to this testimony, we initially note that the trial court's findings of fact and conclusions of law show that the trial court did not include any references to multiple instances of sexual abuse. Thus, even assuming the "multiple times" testimony constituted impermissible hearsay, no prejudicial error was committed as the trial court did not rely upon such statements in rendering its findings of fact and conclusions of law.

[2] However, in Finding of Fact 4, the trial court stated "Mr. Mashburn later told [the female child] that if she ever told about the incident he would beat her to death." Our review of the transcript indicates that Ms. Sweat learned this information during the course of her investigation and not during the initial interview that lead to the investigation. Moreover, there is no indication that this statement was entered for anything other than for the truth of the matter asserted. After careful analysis, we conclude that this testimony was not admissible under any hearsay exceptions. Accordingly, it was error for the trial court to admit this statement and to rely upon it in rendering its Findings of fact and conclusions of law. However, because the allegations of abuse and neglect were supported by substantial evidence, we conclude the erroneous admission of Ms. Sweat's testimony was harmless.

[3] In her final argument regarding Ms. Sweat, Margaret Mashburn challenges the following testimony regarding Paul Mashburn's granddaughters:

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

One of Rachel's—or both of Rachel's daughters, who are five and six years old, disclosed sexual—a lot of sexual activity. The youngest one also disclosed specifically that she often is tickled by her grandfather.

Q: Who is her grandfather?

A: Paul Mashburn. And she demonstrated on a doll that she is tickled in the crotch.

After reviewing the record and transcript, we conclude the trial court did not consider this testimony for the truth of the matter asserted. Indeed, Finding of Fact 5 stated:

That the Court did not consider records from Arkansas and Oklahoma as submitted by the Buncombe County Department of Social Services, but will find that a pending case is open with the North Carolina Yancey County Department of Social Services on [the] grandchildren of Paul Mashburn. [One granddaughter] disclosed sexualized behaviors at school; [the other granddaughter] disclosed the "crotch tickle" whereby Mr. Mashburn tickled her vaginal area; the allegations from [one granddaughter] were substantiated and the investigation on [the other granddaughter] continues. The Buncombe County Department of Social Services has had numerous reports on Paul Mashburn between 1994 and 1999, but none were substantiated.

As the findings of fact indicate Ms. Sweat's testimony regarding Paul Mashburn's alleged abuse of his granddaughters was not considered for the truth of the matter asserted; but rather, to provide the history and context of the Department of Social Service's interaction with Paul Mashburn, we conclude it was not error for the trial court to admit such testimony.

[4] In her next argument, Margaret Mashburn contends the following testimony from Ms. Debbie McKinney constituted inadmissible hearsay:

In an interview with [a granddaughter] she reported that she liked to go to her grandparents' home, that she liked to sit in Grandpa's chair and that she liked to sit in Grandpa's lap, and she liked it when he tickled her . . . She described the tickling as starting with her chest area and she moved down towards her vaginal area.

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

Ms. McKinney, of the Yancey County DSS, investigates neglect and abuse allegations. Yancey County opened an investigation regarding abuse allegations against Paul Mashburn around the same time as the beginning of the Buncombe County investigation. Our review of the transcript indicates Ms. McKinney's testimony related to the nature of Yancey County's investigation, which was not yet complete. Such testimony was not entered for the truth of the matter asserted; but rather, served as corroboration of Ms. Sweat's testimony regarding Paul Mashburn's history with the Department of Social Services. Indeed, during Ms. Sweat's testimony regarding the Yancey County investigation, Margaret Mashburn's counsel objected to its admissibility. In response, the attorney for DSS indicated they would be offering Ms. McKinney's testimony as corroboration. Accordingly, the trial court did not err in admitting Ms. McKinney's testimony.

[5] Margaret Mashburn next contends the trial court erred by allowing the hearsay testimony of Dr. Cynthia Brown, an expert pediatrician.[3] Dr. Brown performed a child medical exam on the female child on March 13, 2001. As part of the child exam in cases of abuse, the female child was also interviewed by "the nurse in our program who has been trained to do these medical histories." The Health Center maintains a transcript of such interviews in the ordinary course of business. During direct examination, Dr. Brown confirmed that before the female child's interview:

> [I]t is explained to the child that it is important for the physician to know everything about the child. We also document their understanding of that concept, their understanding of the difference between telling the truth and telling lies, so that they understand that what they tell us will aid us in doing our physical examination.

Over objections, Dr. Brown recounted a portion of the female child's interview:

> [The female child] disclosed that her stepfather would come into her room and get on top of her and move around. She said the first time she recalled this happening she was around seven. That was right before she moved up there and she knew she was about to turn eight. She disclosed that he also had touched her breasts. She recalled that the last time this had happened had been in the previous November. She expressed concern about being pregnant or having infections. She also noted that when this happened the

---

3. Both parties stipulated that Dr. Brown was an expert in pediatric medicine.

last time she felt wetness and pointed to her—above her genital area down to between her thighs. She also noted that it hurt to pee after this event. She also disclosed that she had been tested for this previously when she was younger and that the test was negative, and that since that time her mother had not believed her about any of this.

Our review of Dr. Brown's testimony reveals that it was admissible under the medical diagnosis exception to the rule against hearsay. In *State v. Hinnant*, 351 N.C. 277, 523 S.E.2d 663, (2000) our Supreme Court held that statements made for the purposes of medical diagnosis and treatment can be admissible even if hearsay under Rule 803(4) if two inquiries are satisfied:

> First, the trial court must determine that the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment. The trial court may consider all objective circumstances of record in determining whether the declarant possessed the requisite intent. Second, the trial court must determine that the declarant's statements were reasonably pertinent to medical diagnosis or treatment.

*Hinnant*, 351 N.C. at 289, 523 S.E.2d at 670-71. "Some factors to consider in determining whether a child had the requisite intent are whether an adult explained to the child the need for treatment and the importance of truthfulness; with whom and under what circumstances the declarant was speaking; the setting of the interview; and the nature of the questions." *State v. Bates*, 140 N.C. App. 743, 745, 538 S.E.2d 597, 599 (2000).

In this case, the statements made for the purpose of medical treatment were reasonably related to that treatment. When asked if "she knew why she was here," the female child answered: "Because I was molested by my stepdad, to see if I've been messed with." The female child discussed her abuse in a clear effort to obtain a diagnosis corroborating that she had indeed been "messed with." Her statements concerning her step father "on top of her" explained her concern about pregnancy and are reasonably related to procuring testing for pregnancy and sexually transmitted diseases. Thus, we uphold the trial court's admission of these statements under the medical diagnosis exception to the hearsay rule.

Nonetheless, Margaret Mashburn argues that "the most compelling reason for disallowing the statements is that the statements were not made to the witness." We are not persuaded. While Dr.

Brown did not personally conduct the interviews of the children, and she testified to the content of both these interviews, DSS offered and this Court accepts that these statements are admissible under the ordinary course of business hearsay exception. *In re Smith*, 56 N.C. App. 142, 148, 287 S.E.2d 440, 444 (1982) ("While it is true that the witnesses had no firsthand knowledge . . . when they assumed responsibility of the case, each had familiarized herself with the case history of the client based on the records kept by the department of social services . . . admissible under the business records exception to the hearsay rule.")

[6] Margaret Mashburn next argues that the trial court should have excluded the testimony of Dr. Rusty Harris, a mental health professional. Dr. Harris testified that the male child "said he was struck with an object, sometimes with a fist, like a knuckle thing, sometimes just popped on the head." Dr. Harris further testified that the female child said Paul Mashburn's abuse of her "went from digital penetration until she says somewhere around ten or eleven that there was intercourse."

Again, the children's statements to Dr. Harris were made for the purpose of diagnosis and treatment. In fact, Dr. Harris diagnosed the children with a myriad of mental health problems, including borderline post traumatic stress syndrome and developmental delay. As a result, he recommended a course of treatment for the juveniles. In short, because the medical diagnosis exception to the hearsay rule applies to the statements of mental health expert Dr. Harris, we uphold the trial court's admission of Dr. Harris' statements.

Thus, with the exception of Ms. Sweat's testimony regarding Paul Mashburn's threat against the female child, we conclude the trial court did not err in admitting Ms. Sweat's, Ms. McKinney's, Dr. Brown's and Dr. Harris's testimony regarding statements made by the minor children. As to the erroneous admission of the threat, we conclude the error was non-prejudicial and does not warrant a new trial. The testimony of Dr. Brown and Dr. Harris provided sufficient evidence of child abuse.

[7] In her second argument on appeal, Margaret Mashburn contends the trial court erred by denying her motion to dismiss at the close of evidence. We disagree. "In testing the sufficiency of the evidence at the close of . . . evidence, the standard is whether there is substantial evidence to support the allegations of the petition, viewing the evidence in the light most favorable to petitioner, and giving petitioner

the benefit of every reasonable inference to be drawn from the evidence." *In re Cusson*, 43 N.C. App. 333, 335, 258 S.E.2d 858, 860 (1979). "The test is whether there is substantial evidence to support the petitioner's allegations." *In re Gleisner*, 141 N.C. App. 475, 478, 539 S.E.2d 362, 364 (2000).

In this case, the record contains evidence supporting the trial court's denial of the motion to dismiss. For example, from the evidence in the child medical and psychological examinations, one could reasonably infer that abuse caused the male child's extreme, unnatural fear of genital exams and scoldings. Likewise, the female child's confusion about what constitutes sex and her fear of sexually transmitted diseases, as well the physical presence of a vaginal bacterial infection support an inference that the female child was sexually abused by her father and neglected by her mother. Moreover, Margaret Mashburn admittedly knew Paul Mashburn punished the male child by paddling him on the bottom of his feet and she knew about her husband's alleged sexual abuses of her daughter and his grandchildren. Nonetheless, the record shows that she denied that the abuse had occurred and stated that the female child had been lying. In light of the evidence supporting the trial court's judgment, we uphold the trial court's denial of her motion to dismiss.

## II. Paul Mashburn's Appeal

[8] In his appeal, Paul Mashburn first argues that the trial court committed prejudicial error by receiving and considering dispositional reports and testimony during the adjudication hearing, in contravention of N.C. Gen. Stat. § 7B-808. We disagree.

Paul Mashburn contends the trial court received testimony of a dispositional nature during the adjudicatory phase of the proceedings. In particular, Paul Mashburn indicates that certain testimony from Dr. Brown, Dr. Harris and Ms. Harrison was related to the best interests of the minor children and not whether the children were abused or neglected as defined by statute. While we conclude that it was improper for the trial court to consider such testimony during adjudication and to incorporate the testimony into its findings of fact, we conclude Paul Mashburn has not demonstrated the trial court used the testimony for purposes other than determining an appropriate disposition. *See In re Barkley*, 61 N.C. App. 267, 271, 300 S.E.2d 713, 716 (1983) (indicating that it must be shown that the trial court considered dispositional evidence for purposes other than determining an appropriate disposition.)

First, in this case, there was substantial evidence upon which the trial court could conclude the minor children were abused and neglected. Second, in the judgment, the trial court rendered one set of findings of fact. Thereafter, in the same judgment, the trial court rendered its adjudicatory and dispositional conclusions of law. Thus, the findings of fact were used to support both the adjudication and dispositional orders. Accordingly, we conclude the trial court did not improperly consider dispositional evidence in determining whether the children were abused and neglected.

[9] Paul Mashburn next argues that the trial court committed prejudicial error by allowing expert opinion testimony, in contravention of N.C. Gen. Stat. § 8C-1, Rule 702. Specifically, Mr. Mashburn contends the trial court allowed Dr. Rusty Harris and Dr. Cynthia Brown to provide unreliable and improper expert opinion testimony to establish the credibility of the minor child. We disagree.

Defendant relies upon our Supreme Court's opinion in *State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) which held: "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility."

At the hearing in this case, Dr. Brown, a qualified expert in pediatric medicine, stated: "It's my opinion that she [the female child] is highly likely to have been a victim of child sexual abuse." As to statements provided by Dr. Harris, although Defendant contends Dr. Harris stated he clinically believed the female child's allegations were truthful, our review of the record does not reveal such a statement. Thus, neither doctor testified sexual abuse *in fact* occurred nor stated the female child was being truthful.

Moreover, in this Court's opinion in *In re Morales*, 159 N.C. App. 429, 433-34, 583 S.E.2d 692, 695 (2003) we stated:

In a jury trial, the distinction between an expert witness' testifying (a) that sexual abuse in fact occurred or (b) that a victim has symptoms consistent with sexual abuse is critical. A jury could well be improperly swayed by the expert's endorsement of the victim's credibility. In a bench trial, however, we can presume, unless an appellant shows otherwise, that the trial court understood the distinction and did not improperly rely upon an expert witness' assessment of credibility.

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

In this case, Mr. Mashburn has not argued the trial court misunderstood the distinction and our review of the trial court's order indicates that the trial court did not treat the expert testimony as an endorsement of the female child's credibility. Thus, even assuming the expert testimony was an impermissible endorsement of the female child's credibility, Mr. Mashburn has not shown the trial court considered the testimony to bolster the female child's credibility.

[10] Mr. Mashburn also contends neither Dr. Harris nor Dr. Brown had a proper foundation for their opinions. We disagree. In rendering the opinion that the female child was "highly likely to have been a victim of child sexual abuse," the record indicates Dr. Brown considered evidence showing that the child had been physically abused and had contracted the vaginal bacterial infection gardenorala vaginalis. While it is true that the infection may be contracted by means other than sexual contact, Dr. Brown testified that this infection is "seen mostly as a result of sexual activity" and could be transmitted by "genital-to-genital contact without penetration." Moreover, Dr. Brown testified that in forty percent of the examinations after a perpetrator had confessed to penetration, the child still had a completely normal genital exam. Accordingly, we conclude Dr. Brown had a proper foundation upon which to render her opinion.

Similarly, we find Dr. Harris's testimony unproblematic. Dr. Harris had seen the female child for eighteen therapy sessions, which included individual, family and group therapy. Dr. Harris also testified that, due to the sexual reactivity issues in the female child's case, a female therapist worked with the female child in group and several individual sessions. In total, Dr. Harris was personally involved in 14 out of 20 hours of therapeutic services.

Moreover, even assuming Dr. Harris testified he clinically believed the female child was truthful in her allegations, the trial court did not rely upon such an opinion in its order. Finding of Fact 8 which addresses Dr. Harris's testimony merely recites the number of therapy sessions, disclosures made by the female child in therapy, and his recommendations for the female child's treatment. Accordingly, we hold the trial court did not erroneously admit the expert opinions of Dr. Harris and Dr. Brown.

Affirmed.

Judge LEVINSON concurs in the result only.

IN RE MASHBURN

[162 N.C. App. 386 (2004)]

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part and dissenting in part.

I concur in affirming the trial court's order regarding Mr. Mashburn. I respectfully dissent from the majority's holding regarding Mrs. Mashburn. No evidence was presented to show that Mrs. Mashburn abused or neglected her children.

Mrs. Mashburn's parental rights are separate and distinct from those of Mr. Mashburn. The trial court erred by considering evidence of Mr. Mashburn's abuse and neglect to determine whether Mrs. Mashburn abused or neglected her children.

### I. Hearsay Evidence

Mrs. Mashburn contends the trial court erred in admitting hearsay evidence regarding the instances of sexual abuse. I note that Mr. Mashburn does not argue on appeal that the trial court erred in admitting this testimony. Appellate review is limited to those assignments of error set out in the record on appeal and properly presented and discussed in the party's brief. Questions not properly raised and presented are deemed abandoned. *See* N.C.R. App. P. 10(a) (2003); N.C.R. App. P. 28(a) (2003); *see also In re Faircloth,* 153 N.C. App. 565, 576, 571 S.E.2d 65, 73 (2002).

Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c) (2003). Hearsay is inadmissible, unless it falls under an exception provided by statute or the North Carolina Rules of Evidence. N.C.R. Evid. 802 (2003).

### A. Statements to Buncombe County and Yancey County DSS

Mrs. Mashburn contends the trial court erred by allowing Buncombe County DSS employee Linda Sweat to testify regarding specific instances of sexual abuse to the female child. Ms. Sweat received a report of abuse and neglect and began investigating the substantive matter of this report. She was allowed to testify, over Mrs. Mashburn's objection, about the contents of the report that she used to begin her investigation:

The report was that the child had allegedly been molested by her stepfather. There were allegations that she might have been preg-

nant, so I went to the school and interviewed her. She subsequently disclosed to me—that she had been molested . . . .

The majority's holding concludes that this testimony was offered for a non-hearsay purpose to explain why Buncombe County DSS began an investigation and to rebut the implication that the female child had fabricated the abuse allegations. I disagree. The report did not contain the female child's description of the stepfather's abuse as the majority's holding concludes. Ms. Sweat testified that "[the female child] had woken up during the night to find Paul Mashburn on top of her . . . rubbing his genitals against her pubic area." The trial transcript shows that Ms. Sweat did not learn this information regarding the alleged act until after she received the report, went to the school, and interviewed the female child. Ms. Sweat's testimony describing the sexual act that the female child disclosed during the investigation was offered to prove the truth of the matter asserted—that the alleged sexual abuse did occur. The trial court erred in admitting this testimony against Mrs. Mashburn.

Mrs. Mashburn also assigns error to the trial court allowing Ms. Sweat to testify, over Mrs. Mashburn's objection, that the female child "was told that she would be beaten to death . . . . Paul Mashburn told her that." The majority's holding properly recognizes that this testimony was offered for the truth of the matter asserted and is not admissible under any hearsay exceptions. The majority's holding concludes, however, that it was harmless error to admit the proffered testimony. I disagree. It was prejudicial against Mrs. Mashburn for the trial court to admit and consider this testimony. Although she is not implicated by this hearsay, the trial court did not exclude this testimony when it ruled on Mrs. Mashburn's parental rights.

Mrs. Mashburn also asserts prejudice in the trial court's error of allowing Ms. Sweat to testify regarding alleged sexual abuse by Mr. Mashburn to his granddaughters:

[B]oth of [Paul Mashburn's grandchildren], who are five and six years old, disclosed sexual—a lot of sexual activity. The youngest one also disclosed specifically that she often is tickled [in the crotch] by her grandfather.

The majority's holding concludes the trial court did not consider this testimony for the truth of the matter asserted, but rather to show the history and context of DSS's interaction with Mr. Mashburn. The majority's holding also concludes that it was not error for Ms. Debbie

McKinney, with Yancey County DSS, to testify regarding the same sexual abuse allegations against Mr. Mashburn because Ms. McKinney's testimony was offered to corroborate Ms. Sweat's testimony. Bootstrapping hearsay upon hearsay is inadmissible and constitutes error.

In finding of fact number five, the trial court indicated that it considered the substance of the testimony and found "that a pending case is open with the North Carolina Yancey County Department of Social Services on [grandchildren of Paul Mashburn]. [One granddaughter] disclosed sexualized behaviors at school; [another granddaughter] disclosed the 'crotch tickle' whereby Mr. Mashburn tickled her vaginal area . . . ." The substance of Ms. McKinney's testimony regarding the grandchildren's statements was offered to prove the truth of the matter asserted. This testimony does not fall within any hearsay exception to be admitted or considered against Mrs. Mashburn.

The trial court erred in considering this hearsay testimony to find abuse or neglect by Mrs. Mashburn. Ms. Sweat's testimony was not offered to show the history and context of DSS interaction. Ms. McKinney's testimony was not offered to corroborate the "history and context" of DSS's interaction with Mr. Mashburn and does not show abuse or neglect by Mrs. Mashburn.

## B. Statements to Dr. Cynthia Brown

Mrs. Mashburn argues the trial court erred in allowing Dr. Cynthia Brown ("Dr. Brown") to testify that the female child "disclosed that she had been tested for [sexual abuse] previously when she was younger and that the test was negative, and that since that time her mother had not believed her about any of this."

The majority's holding concludes this testimony is admissible under the medical diagnosis exception to the rule against hearsay. I disagree. "The veracity of the declarant's statements to the physician is less certain where the statements need not have been made for purposes of promoting treatment or facilitating diagnosis in preparation for treatment." *State v. Hinnant*, 351 N.C. 277, 286, 523 S.E.2d 663, 669 (2000) (quoting *Morgan v. Foretich*, 846 F.2d 941, 952 (4th Cir. 1988) (Powell, J., concurring in part and dissenting in part)). Further, "[i]f the declarant's statements are not pertinent to medical diagnosis, the declarant has no treatment-based motivation to be truthful." *Hinnant*, 351 N.C. at 289, 523 S.E.2d at 670.

Dr. Brown's statement, "since that time her mother had not believed her" was not "reasonably pertinent to medical diagnosis or treatment." *Id.* at 288, 523 S.E.2d at 670. The trial court erred by considering Dr. Brown's statement regarding the female child's statements about what Mrs. Mashburn "believed." This inadmissible hearsay was blatantly prejudicial and is the sole "evidence" of neglect by Mrs. Mashburn.

I concur in the majority's resolution of the other assignments of error as they relate to Mr. Mashburn. As it related to Mrs. Mashburn, I would hold that the trial court erred in: (1) permitting and considering testimony concerning the female child's statements and Mr. Mashburn's statements to DSS, (2) considering hearsay evidence of Mr. Mashburn's alleged abuse to his grandchildren, and (3) allowing Dr. Brown's testimony of the female child's hearsay statement regarding what Mrs. Mashburn "believed."

## II. Motion to Dismiss

Mrs. Mashburn contends the trial court erred in denying her motion to dismiss at the close of evidence. I conclude there was no evidence properly admitted to support a finding or conclusion of abuse or neglect to either the female or male child by Mrs. Mashburn. "Whether a child is neglected or abused is a conclusion of law." *In re Ellis*, 135 N.C. App. 338, 340, 520 S.E.2d 118, 120 (1999). Abuse or neglect must be proven by clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2003). A neglected juvenile is defined as:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (2003). Our Courts require a showing of some physical, mental, or emotion impairment caused by the parents' failure to provide proper care, supervision, or discipline before adjudicating a juvenile neglected. *In re Stumbo*, 357 N.C. 279, 283, 582

S.E.2d 255, 258 (2003) (citation omitted). "Our review of the numerous cases where 'neglect' or a 'neglected juvenile' has been found shows that the conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile." *Id.*

An abused juvenile is:

Any juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:

a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means;

b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means;

c. Uses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior;

d. Commits, permits, or encourages the commission of a violation of the following laws by, with, or upon the juvenile: first-degree rape, as provided in G.S. 14-27.2; second degree rape as provided in G.S. 14-27.3; first-degree sexual offense, as provided in G.S. 14-27.4; second degree sexual offense, as provided in G.S. 14-27.5; sexual act by a custodian, as provided in G.S. 14-27.7; crime against nature, as provided in G.S. 14-177; incest, as provided in G.S. 14-178 and G.S. 14-179; preparation of obscene photographs, slides, or motion pictures of the juvenile, as provided in G.S. 14-190.5; employing or permitting the juvenile to assist in a violation of the obscenity laws as provided in G.S. 14-190.6; dissemination of obscene material to the juvenile as provided in G.S. 14-190.7 and G.S. 14-190.8; displaying or disseminating material harmful to the juvenile as provided in G.S. 14-190.14 and G.S. 14-190.15; first and second degree sexual exploitation of the juvenile as provided in G.S. 14-190.16 and G.S. 14-190.17; promoting the prostitution of the juvenile as provided in G.S. 14-190.18; and taking indecent liberties with the juvenile, as provided in G.S. 14-202.1, regardless of the age of the parties;

e. Creates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others; or

f. Encourages, directs, or approves of delinquent acts involving moral turpitude committed by the juvenile.

N.C. Gen. Stat. § 7B-101(1) (2003).

Here, DSS failed to produce any properly admitted evidence that Mrs. Mashburn abused or neglected either of her children. No evidence showed that Mrs. Mashburn was aware of, participated in, or condoned the abuse. Instead, evidence showed that the female child had previously exaggerated reports of sexual abuse and that she often lied as a result of her personality disorder. Upon her daughter's allegation of sexual abuse, Mrs. Mashburn immediately responded by taking her daughter to a physician and disclosed the allegation.

A medical examination of the female child showed no physical evidence of abuse, other than a vaginal infection often present in women who are not sexually active. A medical examination of the male child failed to disclose any physical evidence of abuse. Mrs. Mashburn testified that her daughter had come to her with reports of sexual abuse only one time previously. Mrs. Mashburn immediately took her daughter to be tested and treated. The report was negative and the daughter informed Mrs. Mashburn that she had lied about the incident. Mrs. Mashburn testified that she had never seen Mr. Mashburn hit the male child on his feet or engage in any inappropriate discipline of the children. She also testified that after either child was disciplined by Mr. Mashburn, she would immediately check the children for injury. Mrs. Mashburn did not neglect or abuse either of her children. She acted as any responsible parent would have acted. Mrs. Mashburn is losing her children solely because of Mr. Mashburn's actions and being considered "guilty" by association.

The evidence failed to show any abuse of or neglect by Mrs. Mashburn to her children. The evidence indicated Mr. Mashburn was the only perpetrator and that Mrs. Mashburn had no knowledge of his abusive practices. The trial court erred by failing to dismiss the petition against Mrs. Mashburn.

### III. Separate Adjudication

Neither the trial court nor the majority's opinion examines the evidence separately for each parent. A fatal flaw in the trial court's order is its failure to make separate findings of fact and conclusions of law for Mr. Mashburn and Mrs. Mashburn during the adjudication stage. N.C. Gen. Stat. § 7B-807 (2003) requires that "[t]he adjudicatory order shall . . . contain appropriate findings of fact and conclusions of law."

The adjudicatory order lists the findings of fact, including the erroneous findings based on inadmissible hearsay discussed above, and then makes separate conclusions of law for the female and male child. The trial court does not clearly state what evidence or facts it relied on to adjudicate whether Mrs. Mashburn abused or neglected her children. The trial court erred by using evidence of Mr. Mashburn's abuse or neglect to find that Mrs. Mashburn abused and neglected either her daughter or son.

Our Courts have long recognized the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Owenby v. Young*, 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003) (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 147 L. Ed. 2d 49, 57 (2000)). Here, the trial court violated Mrs. Mashburn's parental and constitutional rights by considering evidence of Mr. Mashburn's abuse and neglect erroneously admitted against Mrs. Mashburn and concluding that she abused and neglected her children. Each parent holds separate and distinct parental rights and is entitled to a separate adjudication. Evidence of one parent's abuse or neglect cannot be bootstrapped to support allegations against the other parent without showing complicity with or other independent clear and convincing evidence of abuse or neglect by the other parent.

### IV. Conclusion

We all agree the trial court erred in admitting and considering hearsay evidence regarding allegations of Mr. Mashburn's abuse and neglect. I conclude Mrs. Mashburn's parental rights were prejudiced by allowing this testimony into evidence. The trial court erred by failing to dismiss the petition against Mrs. Mashburn on her motion. I vote to reverse the trial court as to the charges of abuse and neglect by Mrs. Mashburn on her two children. I respectfully dissent.