In Re: G.V., C.A., Z.H.
No. COA08-1487
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
The Twiford Law Firm, by Courtney S. Hull, for petitioner-appellee.
Winifred H. Dillon for respondent-appellant mother.
Richard E. Jester for respondent-appellant father.
Pamela Newell Williams for guardian ad litem.
GEER, Judge.
Respondent mother and father appeal from the trial court's order terminating their parental rights. Because the trial court expressly used the best interests of the child standard in the adjudication stage of the termination proceeding  an incorrect standard  we must vacate and remand the trial court's adjudication order and disposition order terminating respondents' parental rights for findings of fact and conclusions of law made under the correct standard.

Facts
The three juveniles, G.V. ("Gary"), C.A. ("Charlie"), and Z.H. ("Zeke"), are all sons of respondent mother.[1] The youngest child, Zeke, is the son of respondent father, who was cohabiting with respondent mother at the time the three children were removed from the home. The father of the two oldest boys, Gary and Charlie, relinquished his parental rights on 10 June 2008.
In March 2003, Dare County Department of Social Services first became involved with respondent mother when she was being evicted. At that time, Dare County Department of Social Services learned of allegations of lack of supervision and drug use. The Department urged respondent mother to contact her parents to come and get her and her two children.
After respondent moved to Chesapeake, Virginia to live with her parents, there was, only a week later, a report of lack of supervision because Gary and Charlie, both under three years old, were playing in the road. After five incidents of lack of supervision, the children were adjudicated neglected on 23 May 2003.
The family moved to Virginia Beach because respondent mother was having fights, the maternal grandmother was drinking, and respondent mother's younger brother was a negative influence. Shortly after the move, Virginia Beach Department of Social Services received two or three reports, including respondent father's telling a social worker that the children had been abused by a seven year old. The Virginia Beach Department substantiated a report of neglect after respondent mother left the children alone while she went to buy drugs and substantiated a report of physical abuse after respondent father had a physical altercation with respondent mother and hit Charlie in the process.
Subsequently, a social worker with the Currituck County Department of Social Services ("DSS"), Wendi Meadows, worked with the family for eight months over concerns regarding lack of supervision, domestic violence, respondent mother's substance abuse, and possible mental illness of respondent mother. On 8 January 2006, an altercation occurred between respondent mother and respondent father that resulted in respondent mother's being arrested for assault and drug charges. On 10 January 2006, respondent mother's drug test came back positive for marijuana and cocaine. On 11 January 2006, DSS filed three juvenile petitions alleging that the three children were abused, neglected, and dependent and obtained nonsecure custody. The trial court entered an order adjudicating the children neglected and dependent juveniles on 6 November 2006.
A second social worker, Cynthia Jarvis, became involved with the family in January 2006. She was able to work with respondent mother for only two months because respondent mother was incarcerated in March 2006 for 20 months. During the two months, respondent mother missed several therapy appointments and visitation had to be stopped because of her behavior towards DSS social workers.
Respondent father obtained a mental health evaluation a year and a half after requested to do so, was not consistent in correcting his behaviors, and was not honest with DSS. For months, respondent father would not give DSS his address and wanted visitation in Virginia since he could not cross the State line due to warrants in North Carolina and conditions on his probation in Virginia. As the trial court also found, respondent father told Ms. Jarvis that "he had trouble taking care of the children, and that he had medical problems, that he had sleep apnea and would fall asleep easily." He fell asleep during some of his visits with the children, did not physically interact much with the children, and left Zeke on a quilt on the floor because he claimed Zeke preferred that a woman hold him.
On 8 December 2006, DSS filed a petition to terminate respondents' parental rights. DSS filed notice of voluntary dismissal of this petition and, on 17 January 2008, filed a new petition to terminate respondents' parental rights. On 25 July 2008, the trial court entered an adjudication order determining that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2007) to terminate respondents' parental rights. On the same date, the court entered a disposition order terminating their parental rights as being in the best interests of the children. Respondent parents timely appealed to this Court.

Discussion
The first question presented by this appeal is whether the trial court applied an incorrect legal standard during the adjudication stage of the proceeding. A termination of parental rights proceeding is "a two-stage process" in which there is (1) an adjudication stage and (2) a disposition stage. In re White, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38, disc. review denied, 318 N.C. 283, 347 S.E.2d 470 (1986). In the adjudication stage, the petitioner must prove by clear, cogent, and convincing evidence the existence of one of the statutory grounds set out for termination of parental rights in N.C. Gen. Stat. § 7B-1111. Id. In the disposition stage, the court exercises its discretion to decide whether terminating the parent's rights is in the child's best interests. Id.
The trial court made the following findings of fact in the adjudication order, setting out the tests it was applying in determining whether the ground of neglect had been proven:
119. The Court considered all of the evidence and the tests set out by the cases, first,the child's best interest, and secondly, the parents' fitness to care for the children at this period;
. . . .
121. The Court, when considering the totality of circumstances with regard to the probability of repetition of neglect, the tests as set forth with respect to the child's best interest and the parents' fitness to care for the child any and all change of circumstances, finds that the Department of Social Services by clear, cogent, and convincing evidence has carried its burden with respect to the ground of neglect and probability of repetition of neglect as to [respondent mother] and [respondent father].
(Emphasis added). Based on these findings of fact, the trial court made the following conclusion of law:
9. The Court, when considering the sole issue of the probability of repetition of neglect and in totality of circumstances, the tests as set forth with respect to the child's best interest and the parents' fitness to care for the child any and all change of circumstances, concludes that the Department of Social Services by clear, cogent, and convincing evidence has carried its burden with respect to the ground of neglect as to [respondent mother] and [respondent father].
(Emphasis added).
In short, when deciding whether grounds existed to terminate respondents' parental rights, the trial court expressly included in both its findings of fact and conclusions of law the children's "best interests" as part of the test to be applied. The law is established, however, that only after the trial court determines that grounds exist to terminate parental rights may the trial court "move[] to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights." In re Huff, 140 N.C. App. 288, 290-91, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001). Indeed, it is improper for a trial court to admit evidence relevant only to a child's best interests during the adjudication phase of a termination of parental rights proceeding. See In re Mashburn, 162 N.C. App. 386, 396, 591 S.E.2d 584, 591-92, appeal dismissed, 603 S.E.2d 884 (2004). DSS acknowledges that the adjudication order references "best interests," but argues that "this does not mean the trial court employed an improper legal standard."[2] Since, however, the trial court repeatedly stated that it was applying the "tests" as to the child's "best interests," we cannot simply ignore the express language in the order and assume that the trial court in fact disregarded the "best interests" during the adjudication phase, especially since the court filed an entirely separate dispositional order.
DSS contends, however, that "[t]here is not one finding of fact or conclusion of law in the adjudicatory order which alludes or speaks to what is in the best interests of the children regarding termination of parental rights . . . ." We cannot agree  our review indicates that the order contains several findings of fact that appear to relate only to the best interests of the children.
34. [Zeke] is clearly attached to his foster parents and he shows many attachment behaviors and skills that one would expect from a normal child.
. . . .
37. . . . The effects of neglect on the brain are profound. Dr. Leslie stated there is research available over the past 10 years of what we can now see in children's brain development and it is astounding, as it looks like organic damage, so when we see the brain scans it is quite striking. These will and can affect the child the rest of his life.
. . . .
40. Of particular importance with children under three, professionals in the field are now asking the Courts, Attorneys and Counselors to protect the children's brain function at this important stage of development, as when parents have not shown an ability to take care of themselves, raising a child is the most stressful thing they will do in their lives and parents that are trying to keep clean, work, should be rewarded, but not with a child. This is not good for either one, as it puts the parent in jeopardy of failing. . . .
41. . . . For [Zeke], his situation is different, to his knowledge he has no other history with any other family except for his foster parents. To move [Zeke] would be a devastating and tragic experience because to his knowledge he has never experienced a move.
Other findings of fact arguably could be relevant to the issue of the probability of a repetition of neglect, but also are relevant to the best interests of the child. We cannot, therefore, agree with DSS that the trial court's findings of fact demonstrate that, contrary to the express language of the order, the trial court did not, in actuality, rely upon the best interests of the children in deciding whether grounds for termination of parental rights existed.
Accordingly, we have no choice, but to vacate the termination of parental rights orders and remand for further proceedings. On remand, the trial court must view the evidence and make findings of fact in light of the correct standard. In cases, such as this one, in which the parents have not had custody of the children, the trial court may conclude that the ground of neglect exists "if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile[s] were returned to [their] parents." In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000). The best interests of the child plays no role in determining whether DSS has made this showing. We leave to the discretion of the trial court whether, given the passage of time, to hear additional evidence on the pertinent issues. Because of our resolution of this issue, we do not address respondents' remaining arguments.
Vacated and remanded.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] The minor children's names have been changed to protect their privacy and for ease of reading.
[2] The guardian ad litem does not address this issue.