611 S.E.2d 187 (2005)
In the Matter of: B.D., minor child.
No. COA03-1599.
Court of Appeals of North Carolina.
April 19, 2005.
*188 Renae S. Alt, Asheville, attorney for petitioner-appellee.
Hall & Hall Attorneys at Law, P.C., by Douglas L. Hall, Newland, attorney for respondent-appellant mother.
David A. Perez, Thomasville, attorney for respondent-appellant father.
Judy N. Rudolph, Asheville, attorney for guardian ad litem appellee.
TIMMONS-GOODSON, Judge.
Respondent mother and respondent father appeal an order of the trial court terminating their parental rights to their adopted son. After deliberate consideration, we vacate the trial court's order.
This Court, in an unpublished opinion, recently decided respondents' appeal from an abuse and neglect adjudication judgment and dispositional order. In Re Derreberry, 160 N.C.App. 252, 584 S.E.2d 892 (2003) ("B.D. I"). The factual history of petitioner's involvement with the child through entry of the adjudication judgment and dispositional order are fully set forth in our previous opinion, and we incorporate as necessary only those facts germane to the present appeal.
The procedural history of the instant case is as follows: On 8 November 2000, the Buncombe County Department of Social Services ("DSS") filed a juvenile petition and summons alleging that the child, who was then five years old, was physically abused and neglected. Following an adjudication and dispositional hearing on 19 February 2001, the trial court entered an order on 20 March 2001 adjudicating the child neglected and granting custody of the child to DSS. On 19 June 2001, DSS filed a second petition and summons alleging that the child was sexually abused and neglected. Following adjudication and dispositional hearings in September and November 2001, the trial court entered an adjudication judgment and dispositional order on 20 February 2002 wherein the trial court adjudicated the child neglected and sexually abused.
In B.D. I, respondents appealed the 20 February 2002 order to this Court, arguing in pertinent part that the trial court's findings of fact were not supported by the evidence. Specifically, respondents challenged petitioner's evidence regarding (1) sightings of respondent father transporting the child to school in his lap on a motorized wheelchair while riding on a busy highway in the dark, (2) reports of sexual abuse, and (3) reports that respondents withdrew the child from school for the purpose of home-schooling him although respondents had few educational materials in their home. The case was to be heard in the Court of Appeals on 23 April 2003.
While B.D. I was pending, DSS filed a petition to terminate respondents' parental rights dated 1 November 2002 on grounds of neglect and that respondents willfully left the child in foster care for more than twelve months without showing any reasonable progress to correct the conditions which led to the child's removal from the home. The trial court conducted the termination of parental rights ("TPR") hearing in February 2003. On 19 May 2003, the trial court entered an order terminating respondents' parental rights. In the adjudicatory portion of the TPR order, the trial court acknowledged that respondents' appeal of the 20 February 2002 adjudication judgment and dispositional order was pending:
THE COURT FINDS AS FACTS BY CLEAR, COGENT, AND CONVINCING EVIDENCE AS FOLLOWS:
....
36. That [respondent father] filed timely Notice of Appeal [of the adjudication judgment and dispositional order] on February 27, 2002 and [respondent mother] filed timely Notice of Appeal on March 1, 2002. To date, the appeals are still pending.
Nevertheless, in the dispositional portion of the TPR order, the trial court incorporated by reference the findings of fact contained in the adjudication judgment and dispositional order:
THE COURT FINDS AS FACT THE FOLLOWING:
1. That the previous findings of the Court are incorporated as though fully set out herein. In addition to the previous *189 findings set out above the Court makes further findings.
The trial court terminated respondents' parental rights on grounds of neglect, and that respondents willfully left the child in foster care for more than twelve months without showing reasonable progress to correct the conditions that led to the child's removal from the home. Almost four months later, on 2 September 2003, this Court issued a ruling in B.D. I which affirmed the trial court's 20 February 2002 adjudication judgment and dispositional order.
Respondents now appeal the trial court's TPR order, raising many issues pertaining to the conduct of the TPR hearing and the findings of fact and conclusions of law contained in the TPR order. However, the dispositive issue on appeal is whether the TPR order was based on grounds independent of those challenged in B.D. I, as required by In Re Stratton, 159 N.C.App. 461, 583 S.E.2d 323 (2003).
The issue of whether the trial court can enter an order terminating parental rights while an underlying order is pending appeal has been raised before this Court several times since 2003. We have addressed the issue in many unpublished opinions and in the following published opinions: In Re Stratton; In Re Hopkins, 163 N.C.App. 38, 592 S.E.2d 22 (2004); In Re N.B., 163 N.C.App. 182, 592 S.E.2d 597 (2004); In Re J.C.S., 164 N.C.App. 96, 595 S.E.2d 155 (2004); and In Re V.L.B., 164 N.C.App. 743, 596 S.E.2d 896 (2004). In Stratton and N.B., the trial court entered a TPR order while this Court was reviewing an adjudication order on appeal. In V.L.B., the trial court entered a TPR order while this Court was reviewing a permanency planning order on appeal. In all three cases, the Court of Appeals held that the trial court did not err by entering the TPR order while the underlying order was on appeal, because the grounds upon which the trial court terminated parental rights were independent of those found in the adjudication orders and permanency planning order, respectively. Stratton, 159 N.C.App. at 463-64, 583 S.E.2d at 324-25; N.B., 163 N.C.App. at 183-84, 592 S.E.2d at 597-98; V.L.B., 164 N.C.App. at 745-46, 596 S.E.2d at 897-98. According to this line of cases, we have held that the appeal of an underlying order is rendered moot by an intervening TPR order if the trial court finds evidence of independent grounds to terminate parental rights. Id.
Such is not the situation before the Court of Appeals this day. In the instant case, unlike Stratton, N.B. and V.L.B., the termination of parental rights is not based on independent grounds as contemplated by Stratton. In the instant case, the trial court terminated respondents' parental rights on grounds supported by the same evidence challenged in B.D. I. Specifically, in B.D. I the respondents argued that (1) "the trial court erred in admitting evidence of [the child's] statements to social workers, the guardian ad litem, and a nurse practitioner, arguing that this testimony constituted inadmissible hearsay;" (2) "the trial court erred by admitting unreliable expert opinion evidence" in the form of testimony by Dr. Cynthia Brown; and (3) there was no evidence to support the finding of fact regarding the child's inappropriate behavior at school. Although this Court was reviewing the admissibility of the evidence and its sufficiency to support the trial court's findings of fact and resulting abuse and neglect adjudication, the trial court relied on the evidence as a basis for terminating respondents' parental rights. In the TPR order, the trial court stated the following:
THE COURT FINDS AS FACTS BY CLEAR, COGENT, AND CONVINCING EVIDENCE AS FOLLOWS:
7. That the Buncombe County Department of Social Services received a Child Protective Services complaint on November 3, 2000. The report alleged that a driver had almost hit a child on Highway 70 in the dark early morning. The child was sitting on the lap of a man who was running his motorized wheelchair on the road, facing traffic, with no reflectors on the chair....
17. That [Social Worker Bob Cummings] and the Guardian ad Litem attempted to assist in the placement of [the child] in school, but [respondent father] yelled that [the child] would "go *190 to public school over my dead body[."] [The child] was enrolled in school in McDowell County for a period of four days, but could not stay because the [respondents] were not residents of McDowell County. Other than that one time, [the child] was never enrolled in school during the time Mr. Cummings was involved in this case. The [respondents] stated that they were home schooling [the child]. Mr. Cummings did see computer games of an educational nature but saw no other evidence that he was being home schooled. The Guardian ad Litem, Ms. Krebbs[,] was told by [respondent father] that [the child] was removed from the school because of her big mouth and that she was never to see [the child] again whether at the school or at their house.
33. That on or about May 30, 2001, the Buncombe County Department of Social Services received a report that [the child] had been sexually abused by both parents....
37. That Naomi Kent, Social Worker, ... met with [the child] on or about May 29, 2001 at his foster parents home. She interviewed [the child] in his bedroom alone. [The child] talked with her about the [allegations of sexual abuse]. During the interview, [the child] crawled under the bed for approximately ten minutes. Ms. Kent interviewed [the child] at the Boys' Club. During the interview [the child] displayed inappropriate behavior. At one point during the interview, he jumped out of the chair and pulled his pants down exposing his genitals to Ms. Kent.
40. That Beth Osbahr, certified as an expert witness in pediatric nursing trained in sexual abuse involving juveniles performed a [child medical evaluation]. After the examination her diagnostic impression of [the child] was child sex abuse, bruising on his lower legs, and behavioral concerns. The determinative factors she used to formulate her opinion was the historical information she received from the Guardian ad Litem and Social Worker, what [the child] discussed during the interview, [the child's] behavior during the interview, [the child's] lack of social boundaries that he exhibited during the interview and his medical problems with enuresis and encopresis. There was no physical evidence of sexual abuse.
41. Dr. Cynthia Brown, certified as an expert witness in pediatric medicine, collaborated with Ms. Osbahr in writing the CME report. Dr. Brown noted many characteristics exhibited by [the child] fit those of a child who has been sexually abused. Dr. Brown concurred with Nurse Osbahr's impressions of child sexual abuse and behavioral concerns.
42. [The child] was exhibiting sexualized behavior [ ] prior to the involvement of the Buncombe County Department. While at W.D. Williams School he was "peeing" on other children and exposing himself. Ms. Krebbs, the Guardian ad Litem had two disturbing incidences with [the child]. On one occasion, [the child] called her into the bathroom and exposed himself to her. On another occasion, while Ms. Krebbs was driving [the child] to an appointment, [the child] had exposed himself to a sixteen-month-old baby whispering "look at me[."] This behavior has continued since [the child] has been in the custody of the Department. At summer camp during the summer of 2001 [the child] was asked not to return because he was urinating on other children, exposing himself and talking to the counselors about "raping" them. That behavior continued in summer camp during 2002, and after school began he was suspended from the bus for exposing himself.
These findings of fact, as well as the trial court's previous findings incorporated by reference in the TPR order, are based on the same evidence that this Court was reviewing in B.D. I at the time the TPR was entered. *191 The evidence of neglect challenged in B.D. I is the same evidence of neglect presented at the TPR hearing. There was no evidence of an independent basis for a finding of neglect as required by Stratton. Thus, we conclude that the trial court erred by terminating respondents parental rights while the same grounds challenged in B.D. I were on appeal.
The trial court also terminated respondents' parental rights on the ground that respondents left the child in foster care for more than twelve months without showing any reasonable progress to correct the conditions leading to removal. In the instant case, the condition of continued neglect which led to the child's removal from the home was established in part by the evidence challenged in B.D. I. Because the evidence which demonstrates that respondents have failed to correct the condition of neglect is inextricably linked to the evidence challenged in B.D. I, we conclude that the trial court also erred by terminating respondents' parental rights on the foster care ground.
We recognize that this Court affirmed the adjudication judgment and dispositional order in B.D. I. However, based on Stratton and its progeny, we are compelled to vacate the underlying TPR order.
VACATED.
Chief Judge MARTIN and Judge HUDSON concur.