**IN RE B.D.**

[174 N.C. App. 234 (2005)]

IN THE MATTER OF: B.D.

No. COA03-1599-2

(Filed 1 November 2005)

**1. Appeal and Error— preservation of issues—failure to argue**

All original assignments of error not argued in either respondent's brief are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

**2. Termination of Parental Rights— jurisdiction—failure to serve summons on minor child**

The trial court did not lack jurisdiction in a termination of parental rights case based on an alleged failure to serve a summons on the minor child when the summons required by N.C.G.S. § 7B-1106(a)(5) was served upon the guardian ad litem's attorney advocate rather than the guardian ad litem, because: (1) assuming arguendo that this procedure was error, the guardian ad litem did not object at trial to the sufficiency of service, nor does the guardian ad litem argue on appeal that the trial court lacked jurisdiction over the minor child; and (2) respondent parents are unable to demonstrate any prejudice arising from the alleged failure to properly serve the minor child.

**3. Termination of Parental Rights— holding special proceeding immediately prior to termination hearing—notice**

The trial court did not err in a termination of parental rights case by holding the special hearing required by N.C.G.S. § 7B-1108(b) immediately prior to commencement of the termination hearing without giving respondents notice ten days prior to the hearing, because: (1) both respondents denied all the material allegations of the petition in their answers thereby indicating that each of the grounds for termination alleged in the petition were in dispute; (2) as there were no issues remaining for the trial court to dispose of at the special hearing, neither respondent suffered prejudice as a result of the failure to notify respondents of the special hearing ten days prior to its commencement; and (3) the trial court inquired as to the parties' surprise and ability to prepare an adequate defense considering the absence of notice regarding the special hearing, and both parties indicated they were ready to proceed.

IN RE B.D.

[174 N.C. App. 234 (2005)]

### 4. Termination of Parental Rights— jurisdiction—failure to attach copy of custody order to petition—notice

The trial court did not lack jurisdiction in a termination of parental rights case based on petitioner's failure to attach to the petition a copy of the custody order regarding the minor child, because: (1) although the Court of Appeals has recently concluded that a failure to attach a custody order results in a facially defective petition which fails to confer subject matter jurisdiction upon the trial court, the Court of Appeals is bound by precedential authority of its prior decisions and should not have created a conflicting line of cases to resolve; (2) there was no indication that respondent parents were unaware of the minor child's placement at any point during the case; and (3) respondents were unable to demonstrate any prejudice arising from petitioner's failure to attach the pertinent custody order to the petition.

### 5. Termination of Parental Rights— jurisdiction—pending appeal of a custody order

The trial court did not lack jurisdiction in a termination of parental rights case even though issues arising out of a prior adjudication and disposition of abuse and neglect were currently pending before the Court of Appeals, because our Supreme Court has recently concluded that the pending appeal of a custody order does not deprive a trial court of jurisdiction of termination proceedings.

### 6. Evidence— testimony—pediatric doctor—nurse practitioner—sexual abuse

The trial court did not err in a termination of parental rights case by allowing a pediatric doctor and nurse practitioner to testify regarding the minor child's alleged sexual abuse, because: (1) the Confrontation Clause is inapplicable to termination proceedings since such proceedings are civil actions where the right to be present, to testify, and to confront witnesses is subject to due limitations; (2) the trial court continually reminded counsel that it would not consider the minor child's statements to the doctor and nurse for the purpose of establishing the truth of the matter asserted therein, but rather for the purpose of establishing the basis of their determinations; (3) despite her absence from the minor child's examination, the trial court did not err by allowing the doctor to testify regarding her determination; and (4) the record reflects that neither the doctor or nurse based their deter-

IN RE B.D.

[174 N.C. App. 234 (2005)]

minations solely upon what the minor child stated in his interviews, but instead both witnesses described the various bases used in reaching their determinations including reports from other sources which detailed the minor child's sexualized behavior, poor social boundaries, and medical history.

**7. Evidence— trial court instruction to attorney on how to elicit evidence or admissible testimony—plain error analysis inapplicable—failure to object**

The trial court did not err in a termination of parental rights case by repeatedly and very specifically instructing petitioner's attorney during her case-in-chief on how to elicit evidence or admissible testimony, because: (1) the plain error rule has not been expanded to civil cases in general or to child custody cases in particular; and (2) there is no indication that respondent mother ever objected at trial to the alleged biased or prejudicial actions of the trial court, and a review of the record revealed no such bias or prejudice.

**8. Termination of Parental Rights— findings of fact—refusal to sign release form related to treatment**

The trial court did not err in a termination of parental rights case by finding as fact that respondent father refused to sign a release form related to his treatment at a local hospital, because there was sufficient evidence supporting this finding including that the social worker assigned to this case testified that: (1) respondent father made it very clear that nobody could subpoena his records from the Veteran's Administration Hospital; (2) there was no indication respondent was receiving the type of counseling ordered by the trial court; and (3) the social worker was unable to ascertain the type of counseling respondent allegedly received at the hospital since her efforts to contact the doctor who was treating respondent were met with a stone wall.

**9. Termination of Parental Rights— grounds—willfully left child in foster care without demonstrating reasonable progress**

The trial court did not err by concluding that sufficient grounds existed to terminate respondent father's parental rights including that respondent willfully left the minor child in foster care for more than twelve months without demonstrating any reasonable progress under the circumstances to correct those conditions which led to the minor child's removal, because: (1) the

**IN RE B.D.**

[174 N.C. App. 234 (2005)]

findings of fact establish that respondent had the ability as well as several opportunities to comply with trial court orders to demonstrate that he was willing to make an effort to correct those conditions leading to the minor child's removal, but respondent was instead hostile and noncooperative for the duration of the underlying juvenile case and he failed to follow through with individual therapy or other additional treatment for his mental health diagnosis in order for reunification efforts to move forward or to show the court his ability to exercise good judgment; and (2) respondent failed to accept any responsibility for the minor child's behavior problems or for failing to obtain counseling for the minor child.

**10. Termination of Parental Rights— best interests of child— no showing of abuse of discretion**

The trial court did not abuse its discretion in a termination of parental rights case by concluding that it was in the minor child's best interests to terminate parental rights, because respondents failed to demonstrate that they would provide care that promotes the minor child's healthy and orderly physical and emotional well-being.

Judge TIMMONS-GOODSON submitted this opinion for filing prior to 31 October 2005.

On remand based upon an order of the Supreme Court filed 18 August 2005 which remanded this case to this Court for reconsideration of its prior decision in light of *In re R.T.W.*, 359 N.C. 539, 614 S.E.2d 489 (2005). Appeal by respondents from order entered 20 January 2003 by Judge Patricia Kaufmann Young in Buncombe County District Court. Originally heard in the Court of Appeals 20 September 2004. The following opinion supercedes and replaces the opinion filed 19 April 2005.

*Renea S. Alt for petitioner-appellee Buncombe County Department of Social Services.*

*Judy N. Rudolph for guardian ad litem-appellee.*

*Hall & Hall Attorneys at Law, P.C., by Douglas L. Hall, for respondent-appellant mother.*

*David A. Perez for respondent-appellant father.*

**IN RE B.D.**

[174 N.C. App. 234 (2005)]

TIMMONS-GOODSON, Judge.

Respondent-mother and respondent-father (collectively, "respondents") appeal the trial court order terminating their parental rights to their adopted son, Brian.[1] For the reasons discussed herein, we affirm the order of the trial court.

The facts and procedural history pertinent to the instant appeal are as follows: On 8 November 2000, Buncombe County Department of Social Services ("petitioner") filed a petition against respondents, alleging that respondent-father was allowing Brian to sit on his lap while he drove a motorized and reflector-less wheelchair on Highway 70 in Asheville, North Carolina, in the dark hours of early morning. Following an adjudication and disposition hearing, the trial court entered an order on 19 March 2001 adjudicating Brian neglected and granting custody to petitioner. On 19 June 2001, petitioner filed a second petition against respondents, alleging that respondents engaged in "sexual games" with Brian and encouraged him to urinate and defecate upon them, their cats, and their residence. Following an adjudication and disposition hearing, the trial court entered an order on 20 February 2002 adjudicating Brian neglected and abused.

Respondents appealed the 20 February 2002 order to this Court. In an unpublished opinion filed 2 September 2003 ("B.D. I"), this Court affirmed the trial court order. On 1 November 2002, while B.D I was pending, petitioner filed a petition to terminate respondents' parental rights, alleging that Brian was neglected and that respondents had willfully left Brian in foster care for more than twelve months without showing any reasonable progress under the circumstances to correct those conditions which led to his removal.

The trial court held a hearing on the matter in February 2003. On 19 May 2003, the trial court entered an order terminating respondents' parental rights. After recapitulating the evidence and findings from the prior adjudication hearings as well as the evidence from the termination hearing, the trial court found as fact that (i) respondents had failed to comply with court orders and recommended services, (ii) there had been no change in the circumstances since the 20 February 2002 adjudication of neglect, (iii) there is a reasonable probability of continuing neglect if Brian were returned to respondent's care, and (iv) respondents had failed to demonstrate any reasonable progress to correct those conditions which led to Brian's

---

1. For the purposes of this opinion, we will refer to the minor child by the pseudonym "Brian."

**IN RE B.D.**

[174 N.C. App. 234 (2005)]

removal from their home. Based upon its findings of fact, the trial court concluded as a matter of law that sufficient grounds exist to terminate respondents' parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). After concluding that it was in Brian's best interests to do so, the trial court ordered the release of Brian for adoption and the termination of respondents' parental rights. Respondents appeal.

---

**[1]** We note initially that, although their rights were terminated concurrently, respondents have filed separate appellate briefs with this Court. To the extent that their individual assignments of error present the same issue, we have chosen to address respondents' arguments together. Furthermore, where either respondent has failed to provide argument in their brief supporting an original assignment of error, we have deemed the omitted assignment of error abandoned pursuant to N.C.R. App. P. 28(b)(6) (2005). Accordingly, we limit our present review to those assignments of error properly preserved by respondents for appeal.

*Respondents' Jurisdictional Arguments*

**[2]** Both respondents argue that because Brian was not served with a summons, the trial court lacked jurisdiction to proceed with the termination hearing. We disagree.

Upon the filing of a petition to terminate parental rights, N.C. Gen. Stat. § 7B-1106(a)(5) (2003) requires that a summons regarding the proceeding be issued to the juvenile whose rights are to be terminated. "[T]he summons and other pleadings or papers directed to the juvenile shall be served upon the juvenile's guardian ad litem if one has been appointed[.]" *Id.* In the instant case, the record reflects that the summons required by N.C. Gen. Stat. § 7B-1106(a)(5) was served upon the guardian *ad litem*'s attorney advocate rather than the guardian *ad litem*. Assuming *arguendo* that this was error, we note that the guardian *ad litem* did not object at trial to the sufficiency of service, nor does the guardian *ad litem* argue on appeal that the trial court lacked jurisdiction over Brian. Instead, respondents object to the sufficiency of the service, arguing that the failure to properly serve Brian necessitates reversal of the trial court's termination order.

"Only a 'party aggrieved' may appeal from an order or judgment of the trial division." *Culton v. Culton*, 327 N.C. 624, 625, 398 S.E.2d 323, 324 (1990) (quoting N.C. Gen. Stat. § 1-271). "An aggrieved party

is one whose rights have been directly and injuriously affected by the action of the court." *Culton*, 327 N.C. at 625, 398 S.E.2d at 324. In the instant case, respondents are unable to demonstrate any prejudice arising from the alleged failure to properly serve Brian. Therefore, we are unable to conclude that respondents were "directly and injuriously" affected by the alleged error, and accordingly, we overrule this argument.

**[3]** Respondents also argue that the trial court erred by holding the special proceeding required by N.C. Gen. Stat. § 7B-1108(b) immediately prior to commencement of the termination hearing. Respondents assert that the failure to notify them of the special hearing ten days prior to its commencement was reversible error. We disagree.

When a respondent denies via answer any material allegation contained within a petition to terminate parental rights, N.C. Gen. Stat. § 7B-1108(b) (2003) requires that the trial court conduct a "special hearing . . . to determine the issues raised by the petition and answer . . . ." While we recognize that the statute provides that "notice of not less than 10 days nor more than 30 days" shall proceed the special hearing, *Id.*, we note that this Court has held that similar requirements under former N.C. Gen. Stat. § 7A-289.29(b) were "general," and "[t]he fact that the hearing [i]s brief and held just prior to the trial does not conflict with the statutory requirements." *In re Peirce*, 53 N.C. App. 373, 383, 281 S.E.2d 198, 204 (1981).

In the instant case, the record reveals that both respondents denied all the material allegations of the petition in their answers, thereby indicating that each of the grounds for termination alleged in the petition were in dispute. As there were no issues remaining for the trial court to dispose of at the special hearing, we are not persuaded that either respondent suffered prejudice as a result of the failure to notify respondents of the special hearing ten days prior to its commencement. Furthermore, we note that at the special hearing, respondent-mother's counsel stated: "I did represent this morning that I am prepared for this hearing. I've read this file. I've been involved in this case for sometime, Your Honor, and know what the petition alleges." Likewise, respondent-father's counsel stated: "I can't represent that we are harmed by it in any particular way by not having a special notice . . . ." These comments were elicited by the trial court, which, citing *In re Taylor*, 97 N.C. App. 57, 387 S.E.2d 230 (1990), inquired as to the parties' "surprise" and ability to prepare an adequate defense considering the absence of notice regarding the

special hearing. In light of the foregoing, we conclude that the trial court did not commit reversible error by holding the special hearing immediately prior to the termination hearing. Accordingly, this argument is overruled.

**[4]** Respondents also argue that the trial court was without jurisdiction to proceed with the termination hearing because petitioner failed to attach a copy of the custody order regarding Brian to the petition. We disagree.

Where a trial court places custody of the juvenile in some agency or person other than the parent, N.C. Gen. Stat. § 7B-1104(5) (2003) requires that a copy of the custody order be attached to a subsequent petition to terminate parental rights. In *In re Joseph Children*, 122 N.C. App. 468, 470 S.E.2d 539 (1996), the respondent assigned as error the petitioner's failure to attach a custody order to the petition and failure to satisfy the notice requirements of the termination statute. On appeal, this Court reviewed the record before it and determined that, because the petition satisfied the general notice requirements of N.C. Gen. Stat. § 1A-1, Rule 4(j1), "the discrepancy" in the petition was not so "material . . . as to result in any prejudice to the respondent." *Id.* at 471, 470 S.E.2d at 541. Similarly, in *In re Humphrey*, 156 N.C. App. 533, 577 S.E.2d 421 (2003), the respondent argued that the trial court lacked subject matter jurisdiction because the petitioner failed to comply with N.C. Gen. Stat. § 7B-1104(7), which requires that a petition state that it "has not been filed to circumvent the provisions of Article 2 of Chapter 50A of the General Statutes, the Uniform Child-Custody Jurisdiction and Enforcement Act." On appeal, this Court concluded as follows:

> [W]e find no authority that compelled dismissal of the action solely because petitioner failed to include this statement of fact in the petition. While it is a better practice to include the factual statement as stated in the statute, under the facts in this case we find that respondent has failed to demonstrate that she was prejudiced as a result of the omission.

156 N.C. App. at 539, 577 S.E.2d at 426. Although we note that this Court has more recently concluded that failure to attach a custody order results in a "facially defective" petition which "fail[s] to confer subject matter jurisdiction upon the trial court[,]" *In re Z.T.B.*, 170 N.C. App. 564, 570, 613 S.E.2d 298, 301 (2005), we are persuaded by the reasoning as well as precedential authority of our prior decisions regarding the statute. *See In re Matter of Appeal from Civil Penalty,*

324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."); *see also In re R.T.W.*, 359 N.C. 539, 542 n.3, 614 S.E.2d 489, 491 n.3 (2005) (citing *Civil Penalty* in resolving conflict in this Court regarding jurisdiction over termination proceedings and noting that a second panel of this Court should have followed a prior panel's decision, "which [wa]s the older of the two cases. Had it done so, we would not have two conflicting lines of cases to resolve.").

In the instant case, there is no indication that petitioner attached a copy of the custody order to the petition to terminate respondents' parental rights. However, there is also no indication that respondents were unaware of Brian's placement at any point during the case. The petition noted that "custody of [Brian] was given by prior orders" of the trial court, and it referenced the court file wherein those orders were entered. In his answer, respondent-father admitted that Brian was "in the legal custody of the Buncombe County Department of Social Services." As detailed above, counsel for both respondents indicated at the termination hearing that they had been involved in the case for some time and had reviewed the trial court's orders prior to the hearing. Various trial court orders in the record note that respondents were present at pre-termination hearings in which custody was granted to and continued with petitioner as well as those hearings in which visitation options were discussed and determined. In light of the foregoing, we conclude that respondents are unable to demonstrate any prejudice arising from petitioner's failure to attach the pertinent custody order to the petition. Accordingly, we overrule this argument.

**[5]** Respondents further argue that the trial court was without jurisdiction to proceed with the termination hearing because issues arising out of a prior adjudication and disposition of abuse and neglect were currently pending before this Court. In a previous opinion in this case, *In re B.D.*, 169 N.C. App. 803, 611 S.E.2d 187 (2005) ("*B.D. II*"), this Court concluded that the trial court was without jurisdiction to terminate respondents' parental rights while *B.D. I* was pending. However, our Supreme Court has recently concluded that "the pending appeal of a custody order does not deprive a trial court of jurisdiction over termination proceedings." *R.T.W.*, 359 N.C. at 542, 614 S.E.2d at 491. In so concluding, the Supreme Court upheld this Court's opinion in *In re Stratton*, 159 N.C. App. 461, 583 S.E.2d 323,

**IN RE B.D.**

[174 N.C. App. 234 (2005)]

*disc. review denied,* 357 N.C. 506, 588 S.E.2d 472 (2003), in which the respondent's appeal of a neglect adjudication was dismissed as moot where a subsequent termination order was entered while the appeal was pending. In light of *R.T.W.*, we overrule respondents' final jurisdictional argument.

### Respondents' Evidentiary Arguments

[6] Both respondents argue that the trial court erred by allowing a pediatric doctor and nurse practitioner to testify regarding Brian's alleged sexual abuse. Respondents assert that the witnesses' testimony and conclusions relied on improper bases and were thus inadmissible. We disagree.

The record in the instant case reflects that both Dr. Cynthia Brown ("Dr. Brown") and Certified Nurse Practitioner Elizabeth Osbahr ("Nurse Osbahr") testified at the termination hearing. Dr. Brown was received as an expert in pediatric medicine, and she testified that Brian's medical history, sexualized behavior, poor social boundaries, and use of sexualized language "fit a child who has been sexually abused." Nurse Osbahr testified that it was her "impression" that Brian had been "sexual[ly] abused, that he had bruising on his lower legs, and that there were behavior concerns."

We note that respondent-mother contends that Brian's statements to Dr. Brown and Nurse Osbahr were "hearsay statements," and that reference to the statements during their testimony violated her rights under the Confrontation Clause. Respondent-mother also contends that because Nurse Osbahr's testimony was received in order to corroborate Brian's later testimony, her testimony was inadmissible when petitioner failed to thereafter elicit testimony from Brian. This Court has recently concluded that the Confrontation Clause is inapplicable to termination proceedings, in that such proceedings are civil actions where " 'the right to be present, to testify, and to confront witnesses [is] subject to "due limitations." ' " *In re D.R.*, 172 N.C. App. 300, 303, 616 S.E.2d 300, 303 (2005). Furthermore, in the instant case, the trial court continually reminded trial counsel that it would not consider Brian's statements to Dr. Brown and Nurse Osbahr for the purpose of establishing the truth of the matter asserted therein, but rather for the purpose of establishing the basis of their determinations. Although the trial court initially mentioned the possibility of "shifting gears" to allow Nurse Osbahr's testimony to be "corroborative as opposed to for the purpose of diagnosis and treatment," following extensive *voir dire* from all par-

ties regarding the foundation for Nurse Osbahr's testimony, the trial court ruled only upon the admissibility of her testimony for substantive purposes and made no mention regarding its admissibility for corroborative purposes. Accordingly, we overrule these arguments from respondent-mother.

Respondents also contend that because Dr. Brown was not present when Brian was being interviewed and examined, her opinion regarding his potential abuse was based on an improper foundation. This Court has recently rejected a similar argument by the respondent in *In re Mashburn*, 162 N.C. App. 386, 591 S.E.2d 584, *appeal dismissed*, 359 N.C. 68, 603 S.E.2d 884 (2004). In *Mashburn*, the respondent-mother argued that an expert pediatrician's testimony was inadmissible because the child's statements forming the basis of her medical diagnosis were not made directly to her. This Court stated that "[w]hile [the witness] did not personally conduct the interviews of the children, and she testified to the content of both these interviews, [the petitioner] offered and this Court accepts that these statements are admissible under the ordinary course of business hearsay exception." 162 N.C. App. at 394-95, 591 S.E.2d at 590 (citing *In re Smith*, 56 N.C. App. 142, 148, 287 S.E.2d 440, 444 ("While it is true that the witnesses had no firsthand knowledge . . . when they assumed responsibility of the case, each had familiarized herself with the case history of the client based on the records kept by the department of social services . . . admissible under the business records exception to the hearsay rule."), *cert. denied*, 306 N.C. 385, 294 S.E.2d 212 (1982)).

In the instant case, the record indicates that rather than relying upon the business records excpetion, the trial court relied upon N.C. Gen. Stat. § 8C-1, Rule 703 in allowing Dr. Brown to testify. Rule 703 provides that an expert may testify regarding inadmissible facts and data made known to him or her "at or before the hearing" if the facts and data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject[.]" N.C. Gen. Stat. § 8C-1, Rule 703 (2003). Here, Dr. Brown testified on *voir dire* regarding the "normal way" she reaches her conclusions regarding potentially abused children, indicating that she reaches her decision after receiving information and data reported by several agencies and individuals, including social workers, guardians *ad litem*, nurse practitioners, and in some cases, the children themselves. Dr. Brown testified that such methods are "true of medical evaluations in general," and that after compiling the pertinent infor-

mation from various sources, she routinely fills out a form provided by the State which requires her to "use all the information provided" to reach a conclusion. In light of the foregoing, we conclude that, despite her absence from Brian's examination, the trial court did not err by allowing Dr. Brown to testify regarding her determination.

Respondents maintain that because the conclusions of Dr. Brown and Nurse Osbahr were based solely upon Brian's statements, they were inadmissible at the termination hearing. In support of this assertion, respondents cite *State v. Grover*, 142 N.C. App. 411, 543 S.E.2d 179, *aff'd per curiam*, 354 N.C. 354, 553 S.E.2d 679 (2001) and *State v. Bates*, 140 N.C. App. 743, 538 S.E.2d 597 (2000), *disc. review denied*, 353 N.C. 383, 547 S.E.2d 19 (2001), in which this Court concluded that where a medical professional's determination is based solely upon a juvenile's statements that he or she has been abused, the determination lacks a sufficient foundation and should not be admissible. Assuming *arguendo* that *Grover* and *Bates* apply to termination proceedings in addition to child sexual abuse trials, we conclude that their holdings are inapplicable to the instant case. Here, the record reflects that neither Dr. Brown nor Nurse Osbahr based their determinations solely upon what Brian stated in his interviews. Instead, both witnesses described the various bases used in reaching their determinations, including reports from other sources which detailed Brian's sexualized behavior, poor social boundaries, and medical history. Accordingly, we overrule this argument.

### Respondent-mother's Individual Argument

[7] In addition to those arguments she shares with respondent-father, respondent-mother argues that the trial court erred by "repeatedly and very specifically instruct[ing] the attorney for [petitioner] during her case in chief on how to elicit evidence or admissible testimony[.]" Respondent-mother asserts that by "essentially hijack[ing] and tr[ying] the adjudication for [petitioner]," the trial court committed plain error. However, we note that to date, the plain error rule has not been expanded to civil cases in general or to child custody cases in particular. *See In re Gleisner*, 141 N.C. App. 475, 479, 539 S.E.2d 362, 365 (2000); *Raynor v. Odom*, 124 N.C. App. 724, 732, 478 S.E.2d 655, 660 (1996). Furthermore, in the instant case, there is no indication that respondent-mother ever objected at trial to the alleged biased or prejudicial actions of the trial court, and our review of the record reveals no such bias or prejudice. Accordingly, we overrule this argument.

**IN RE B.D.**

[174 N.C. App. 234 (2005)]

*Respondent-father's Individual Arguments*

In addition to those arguments he shares with respondent-mother, respondent-father argues that the trial court erred by: (I) finding as fact that he refused to sign a release form related to his treatment at a local hospital; (II) concluding that sufficient grounds exist to terminate his parental rights; and (III) concluding that it was in Brian's best interests to terminate his parental rights.

[8] Respondent-father first argues that the trial court erred by finding that he refused to sign a release form related to his treatment at a local hospital. Respondent-father asserts that the trial court's finding is not supported by sufficient evidence in the record. We disagree.

Where a respondent challenges the sufficiency of the evidence relied upon by a trial court in terminating his or her parental rights, "we look to see whether there is clear, cogent and convincing competent evidence to support the findings. If there is such competent evidence, the findings are binding upon us on appeal." *In re Allen,* 58 N.C. App. 322, 325, 293 S.E.2d 607, 609 (1982) (citations omitted). In the instant case, the trial court made the following pertinent finding of fact:

> 31. That after [respondents] completed their psychological evaluations, Ms. Rothard, Social Worker for the Department of Social Services, made referrals to Blue Ridge Mental Health Center for therapy. . . . [Respondent-father] refused to go to the intake appointment until after the second adjudication when he was reordered by the Court. When the second intake appointment was scheduled [respondent-father] attended [but] spent the first half hour refusing to be seen at Blue Ridge Adult Services. [Respondent-father] did not follow up with any therapy sessions thereafter with Blue Ridge. From 2001 to present, neither parent had received counseling through Blue Ridge. [Respondent-father] refused to go to Blue Ridge Mental Health because the records would be available to the Court. [Respondent-father] reported that he was being treated at the VA Hospital, however when he was asked to sign a release in order to verify the information, he refused. Ms. Rothard was never able to ascertain whether he received therapy at the VA Hospital. . . .

After reviewing the record in the instant case, we conclude that competent evidence supports this finding of fact. At the termination hearing, Janet Rothard ("Rothard") testified that she was a social

worker assigned to Brian's case. Rothard testified that she accompanied respondent-father to Blue Ridge Adult Services following a prior neglect adjudication. Rothard testified that while at Blue Ridge Adult Services, respondent-father "spent about a half an hour refusing to be seen," but nevertheless subsequently "did an about-face and agreed that he would be willing to be seen." Rothard further testified that respondent-father did not attend the scheduled follow-up appointments, and in response to a question regarding the nature of "the VA support group," Rothard testified that respondent-father "made it very clear that the reason he did not choose to go to Blue Ridge and be a client there was because Blue Ridge records are available to the courts." Rothard explained as follows:

> According to [respondent-father], the records from therapy at the Veteran's Administration Hospital are not available to the court. I requested several times that [respondent-father] would sign a release with the VA giving me the ability to speak with his therapist about his treatment. He gave me the name of the therapist. I called the therapist repeatedly. That therapist would never return my calls, and I never had the ability to talk to anyone at the VA. So whether he went or didn't go is not something I ever had the ability to know.

Respondent contends that this testimony does not support the trial court's finding of fact, in that it establishes "only" that Rothard requested that he sign a release and not that Rothard was unable to determine the nature and extent of the treatment. However, we note that Rothard further testified that respondent-father "made it very clear that we could never subpoena [his] records" from the Veteran's Administration Hospital, that there was no indication respondent-father was receiving "the type of counseling . . . ordered" by the trial court, and that she was unable to ascertain the type of counseling respondent-father allegedly received at the Veteran's Administration Hospital because her "efforts to contact . . . the doctor who was treating him met with a stone wall." In light of the foregoing, we conclude that sufficient evidence supports the trial court's finding of fact on this issue. Accordingly, we overrule this argument.

[9] Respondent-father next argues that the trial court erred by concluding that sufficient grounds exist to terminate his parental rights to Brian. Although respondent-father asserts that the trial court was without ample evidence to reach its ultimate conclusions regarding petitioner's allegations, notwithstanding that finding of fact discussed above, respondent-father fails to assign error to any specific findings

of fact made by the trial court. "An order terminating parental rights will be upheld if there is clear, cogent, and convincing evidence to support the findings of fact and those findings of fact support the trial court's conclusions of law." *In re Clark*, 159 N.C. App. 75, 83, 582 S.E.2d 657, 662 (2003) (citation omitted). "[A] broadside exception that the trial court's conclusion of law is not supported by the evidence[] does not present for review the sufficiency of the evidence to support the entire body of the findings of fact. Instead, the trial court's findings of fact are binding on appeal, and we are left to determine whether the trial court's findings support its conclusion of law." *In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001) (citations omitted).

In the instant case, the trial court concluded that sufficient grounds exist to terminate respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). N.C. Gen. Stat. § 7B-1111(a)(2) (2003) provides that a trial court may terminate a respondent's parental rights upon concluding that the respondent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." A determination of willfulness does not require a showing that the parent was at fault. *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Instead, "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001).

Here, it is undisputed that Brian has been in petitioner's custody with placement outside respondents' home since April 2001. Along with finding of fact thirty-one, the trial court made the following pertinent findings of fact in its termination order:

29. That Dr. Grandis performed a psychological evaluation on [respondent-father] on May 4, 2001. . . .

30. Dr. Grandis recommended that [respondent-father's] mental health be monitored closely. He further added that reunification should be contingent upon supports. Dr. Grandis believes it is important to rule out the possible disorders for safe parenting. Ruling out such disorders would require follow up therapy.

. . . .

43. Ms. Rothard reported that following the allegations of sexual abuse in June 2001 [petitioner's] plan changed from reunification to adoption. . . . The Court continued to order [respondents] to comply with treatment recommendations.

. . . .

49. Ms. Rothard's last contact with [respondents] was in November 2002 at an agency review hearing. No changes by [respondents] had been made to ameliorate the risks outlined in the Risk Assessment.

. . . .

55. [Respondents] have a history of failing to comply with court orders and failing to cooperate with the services offered by [petitioner] and the Guardian ad Litem. Not only have services been recommended by [petitioner], but on numerous occasions the Court has ordered, repeatedly, as evidenced by the above outline of prior Court orders involving [Brian]. Counseling for [respondents] was deemed necessary for reunification efforts. The Court has repeatedly determined that counseling for [respondents] was in the best interests of [Brian]. . . . [Respondents] have repeatedly been defiant and uncooperative with Court orders and with [petitioner] beginning with the initial petition alleging child abuse and neglect, through the first and second adjudication orders, and later after each permanency and planning hearing.

56. Both [respondents] were ordered by the Court to obtain psychological evaluations and to follow all recommendations of the evaluations over two years ago on February 19, 2001, following the initial adjudication hearing. . . . The initial report made to [petitioner] involved [respondent-father] transporting [Brian] on his motorized wheelchair on Highway 70. Although that was the incident that led to the initial investigation and ultimate finding of neglect, the Court heard evidence and made findings that [respondents] refused to cooperate with the protection plan. The Court found that [respondent-father] became irate and threatened to get his gun in order to make a citizen[']s arrest. . . . [Respondents] refused to cooperate with obtaining psychological evaluations for themselves and for [Brian]. As well, [respondents] refused to cooperate with the referral for [Brian's] [developmental evaluation]. . . . The Court specifically found that [Brian] was removed from the home of [respondents] and placed in foster

care because [Brian] was not enrolled in school, was not involved in counseling, had not had a psychological evaluation, [respondents] had failed to cooperate with [petitioner] in obtaining a psychological evaluation or enrolling [Brian] in counseling, and both parents refused to participate in psychological evaluations for themselves. . . . The Court ordered [respondents] to cooperate with the process to obtain psychological assessments and to comply with any recommendations of the assessments. Although [respondents] eventually had the psychologicals performed, neither has complied with treatment recommendations to date. Treatment was recommended in order to address [respondents'] ability to make proper parenting decisions and to address the anger and frustration directed toward [petitioner] and other authority figures. There is no evidence [respondents] have addressed their mental health diagnos[e]s. There is no evidence to support advancement in their mental health needs supporting their fitness to care for [Brian], as of the date of the termination hearing. [Respondents'] defiance in their own mental health needs strongly suggests their unwillingness and defiance to facilitate the necessary special treatment needs of [Brian].

These findings of fact establish that respondent-father had the ability as well as several opportunities to comply with trial court orders and demonstrate that he was willing to make an effort to correct those conditions leading to Brian's removal. Nevertheless, as noted by the trial court, respondent-father was instead "hostile and non-cooperative for the duration of the underlying juvenile case," and he failed to "follow through with individual therapy or other additional treatment for his mental health diagnosis in order for reunification efforts to move forward or [to show] the Court his ability to exercise good judgment . . . ." Respondent-father further "failed to accept any responsibility for [Brian's] behavior problems or for failing to obtain counseling for the minor child." In light of the foregoing, we conclude that the trial court's findings of fact support its determination that respondent willfully left Brian in foster care for more than twelve months without demonstrating any reasonable progress under the circumstances to correct those conditions which led to Brian's removal. As such a determination is sufficient in and of itself to justify termination of parental rights, we need not address respondent-father's arguments regarding the trial court's conclusion that he neglected Brian. *Clark*, 159 N.C. App. at 84, 582 S.E.2d at 663. Accordingly, we overrule this argument.

[10] Respondent-father's final argument is that the trial court erred by concluding that it was in Brian's best interests to terminate his parental rights. We disagree.

When the petitioner succeeds in establishing the existence of any one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111, "the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C. Gen. Stat. § 7B-1110(a) (2003). Our review of the trial court's decision regarding the best interests of the child is limited to determining whether the trial court abused its discretion. *In re Allred*, 122 N.C. App. 561, 569, 471 S.E.2d 84, 88 (1996).

In the instant case, as detailed above, the allegations against petitioners involved particularly disturbing acts of neglect and abuse. After receiving evidence and hearing argument from both parties, the trial court determined that Brian has "special treatment needs" and requires placement "with custodians who recognize his needs for treatment and are willing to accept and follow through with recommendations." Recognizing that "[i]n order for [Brian] to succeed personally and academically he needs to be in an environment that encourages mental health treatment and structure" and that respondents "have failed to demonstrate that they will provide care that promotes [Brian's] healthy and orderly physical and emotional well-being[,]" the trial court concluded that it was in Brian's best interests to terminate respondents' parental rights and release Brian for adoption. After reviewing the record, we are not persuaded that the trial court abused its discretion in reaching its decision. Accordingly, we overrule respondent-father's final argument.

## Conclusion

In light of the foregoing conclusions, we affirm the trial court order terminating respondents' parental rights to Brian.

Affirmed.

Chief Judge MARTIN and Judge HUDSON concur.

Judge TIMMONS-GOODSON submitted this opinion for filing prior to 31 October 2005.