IN THE MATTER OF: A.A.P., Al.M.P., & An.M.P.
No. COA08-674.
Court of Appeals of North Carolina.
Filed November 18, 2008
This case not for publication
Paul W. Freeman for petitioner-appellee Wilkes County Department of Social Services.
Tracy M. Jordan for guardian ad litem.
Carol Ann Bauer for respondent-appellant mother.
Hartsell & Williams, P.A., by Christy E. Wilhelm for respondent-appellant father.
STEELMAN, Judge.
Because respondent did not object to evidence of his use of marijuana in prison at the termination hearing, and because plain error review is not available in termination of parental rights cases, respondent has failed to preserve this issue for appellate review. Where respondent failed to show that he was prejudiced by the delay in holding the termination hearing, a new hearing is not warranted. Where the trial court's findings of fact were supported by clear, cogent, and convincing evidence, and supported the trial court's conclusions of law, the trial court did not err in determining that grounds for termination of parental rights existed. Where the trial court refused to hear evidence offered by respondents during the dispositional phase, the court abused its discretion, and this matter is remanded for a new hearing on the disposition phase.

I. Factual and Procedural Background
Respondents are the parents of the minor children A.A.P., Al.M.P., & An.M.P . At the time of the termination hearing, the children were ages eleven, nine, and seven, respectively. The Wilkes County Department of Social Services ("DSS") first became involved with the family in April of 2004, due to mother's substance abuse. On 21 October 2004, mother took the two oldest children to school while she was impaired. DSS found mother still impaired with father in a restaurant near the school. The children were voluntarily placed with a family friend. On 27 October 2004, DSS filed petitions alleging that respondents neglected all three children by: (1) failing to provide proper care, supervision, or discipline; and (2) placing the children in an environment injurious to their welfare. Judge Mitchell McLean entered nonsecure custody orders for all three children. The children were placed in DSS custody and foster care on 28 October 2004.
A family services case plan was put in effect in October of 2004 that required respondents to complete parenting classes, undergo substance abuse assessments and follow treatment recommendations, submit to random drug screens, make arrangements to pay child support, and advise DSS of any changes in address. On 16 November 2004, Judge Edgar B. Gregory entered an order in which respondents agreed that the children were neglected and that it was in the children's best interests to be in DSS custody. Judge Gregory filed an order on 13 December 2004 directing DSS to conduct a placement home study with T.C., the children's aunt who resided in Florida. On 5 February 2005, Judge McLean entered an order in which respondents agreed that it was in the children's best interests that custody be transferred to T.C.
On 18 May 2005, T.C. called and advised DSS that mother had taken the children from her home by falsely claiming to Florida authorities that she was entitled to custody. Ultimately, the Florida authorities regained custody of the children, and they were brought back to North Carolina.
On 23 January 2006, Judge David V. Byrd held a hearing to review the permanent plan for the children. Judge Byrd found that mother had attended parenting classes, but that she had not made progress. Father had not contacted DSS until about a month prior to the hearing, and still had several treatments and assessments to complete. The case came on for review hearings, and Judge Byrd and Judge Gregory continued the children in DSS custody based on respondents' continued lack of progress. On 15 August 2006, Judge Gregory ordered respondents to submit to psychological evaluations and father to pay child support.
In a 19 September 2006 order, Judge Gregory found that respondents were separated and residing in different homes, and that they failed to show improvement in their behavior or to strengthen their parental relationships with the children. Judge Gregory relieved DSS of any further requirement to continue reunification efforts.
On 7 June 2007, Judge McLean entered an order changing the permanent plan for the children from reunification to adoption. Because both respondents were incarcerated at the time, Judge McLean ordered no visitation until their release. On 1 November 2007, DSS filed petitions to terminate respondents' parental rights as to each child. The petitions alleged the following grounds for termination: (1) neglect under N.C. Gen. Stat. § 7B-1111(a)(1); (2) willfully leaving the children in foster care under N.C. Gen. Stat. § 7B-1111(a)(2); and (3) willfully failing to pay a reasonable portion of the cost of care for the children under N.C. Gen. Stat. § 7B-1111(a)(3).
The termination petitions came on for hearing on 26 February 2008. Respondents sought to subpoena the children to testify at the hearing. The children's guardian ad litem moved to quash the subpoenas. Prior to the disposition portion of the hearing, the trial court determined that the children's testimony could not make a difference in the hearing, and granted the motion to quash.
The evidence at the hearing tended to show that the children had continuously been in DSS custody since 27 June 2005. DSS prepared a family services case plan for respondents at that time. The case plan was essentially the same plan that existed when the children first came into DSS custody in 2004. Respondents completed a parenting class. They were directed to execute a voluntary support agreement, but failed to do so. Father was employed when he was not incarcerated, but did not provide child support for the children. Father made one support payment of $400.00 while he was incarcerated from work-release earnings. Mother worked briefly at a restaurant, but was fired for coming to work disoriented and incoherent. Respondents "sporadically" visited a mental health center. Mother did have a mental health evaluation in March of 2006, but father did not. Respondents continued to have substance abuse problems with marijuana, opiates, cocaine, and benzodiazepine, and they both tested positive for Oxycodone in September of 2007.
Mother was in jail from February through September of 2007. Father was incarcerated from August 2003 through January of 2004, and again in early 2007. The children were aware that respondents were incarcerated. Subsequent to respondents' release from jail, DSS tried multiple times, unsuccessfully, to make contact with them. DSS rarely had contact with respondents after their final visit with the children in December of 2006. Respondents moved multiple times without promptly informing DSS of their new location.
In July of 2005, the children were placed in the Crossnore School. At Crossnore, all three children lived in the same cottage, attended school, and received counseling. Although the children were initially diagnosed with an "adjustment disorder," they appeared to be "processing the whole adoption process, what's going on with their family now[.]" Further, although the children were behind in their schoolwork when they arrived at Crossnore, they made progress during their stay there. While the children lived at Crossnore, they met Mr. and Mrs. B, who worked there as teaching parents. The children had a good relationship with the B's, and seemed to feel comfortable with them. The B's wished to adopt the children, and the children frequently discussed the plan of adoption with the staff at Crossnore. The children had overnight visits with the B's. Although the B's relocated to another state, they continued to visit with the children when they stayed with family members in North Carolina.
Respondents did not present any evidence. On 12 March 2008, the trial court entered orders terminating respondents' parental rights as to all three children based on all three grounds alleged in the petitions. The trial court concluded that there had been little positive change in respondents since the original determination of neglect. From the order terminating parental rights, respondents appeal.

II. Respondents' Argument
Respondents contend that the trial court erred by failing to bifurcate the adjudication and disposition hearings. Respondents argue that the trial court heard evidence as to the children's best interest during the adjudication phase, and that the trial court thus applied the incorrect standard of proof in making its adjudicative findings. We disagree. Although termination of parental rights cases take place in two stages, adjudication and disposition, this Court has held that there is "no requirement from the statutes or from [In re Montgomery, 311 N.C. 101, 316 S.E. 2d 246 (1984)] that the stages be conducted at two separate hearings." In re White, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38 (1986). "[A] trial court may combine the [N.C. Gen. Stat.] § 7B-1109 adjudicatory stage and the [N.C. Gen. Stat.] § 7B-1110 dispositional stage into one hearing, so long as the trial court applies the correct evidentiary standard at each stage and the trial court's orders associated with the termination action contain the appropriate standard-of-proof recitations[.]" In re R.B.B., ___ N.C. App. ___, ___, 654 S.E.2d 514, 518 (2007). "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." In re Blackburn, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001).
Respondents acknowledge that the trial court was not required to hold separate evidentiary hearings for the adjudication and disposition stages. Respondents do not appear to challenge the evidentiary basis of the trial court's findings of fact. Instead, they argue that "[b]y hearing disposition evidence during the adjudication phase and by using that disposition evidence to make findings of fact based on the `clear and convincing evidence' standard, the trial court used the disposition evidence to make improper adjudication findings and used the wrong standard to judge this evidence." Respondents point to nothing in the trial court's order that indicates that it applied the wrong legal standard to the evidence, either at adjudication or disposition. The order reflects that the trial court made adjudication findings based on clear, cogent and convincing evidence and concluded that these findings supported its conclusions that grounds existed for termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2) & (3).
This argument is without merit.

III. Father's Arguments
We next address the arguments made only by father. First, father contends that the trial court committed plain error and violated his due process rights when it admitted the social worker's testimony that he was caught with marijuana while in prison. We disagree.

A. Plain Error Review
"It is a well-established rule of appellate procedure that `[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make.'" Wood v. Weldon, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) (quoting N.C. R. App. P. 10(b)(1)). The failure to object, even to a constitutional error, generally waives appellate review. State v. Horner, 310 N.C. 274, 283, 311 S.E.2d 281, 287 (1984). "[T]he plain error rule has not been expanded to civil cases in general or to child custody cases in particular." In re B.D., 174 N.C. App. 234, 245, 620 S.E.2d 913, 920 (2005) (citations omitted).
Because father did not object to the social worker's testimony at the termination hearing, and because plain error review is not available in termination of parental rights cases, he has failed to preserve this issue for appellate review.
This argument is without merit.

B. Delay in Termination Hearing
Father next contends that the trial court failed to conduct the termination hearing within ninety days of the filing of the petition. We find any error harmless.
Chapter 7B requires that a termination hearing be conducted within ninety days of the filing of the petition. N.C. Gen. Stat. § 7B-1109(a) (2007). The time limitations established by the juvenile code are not jurisdictional in termination of parental rights cases, however, and an appellant must show he was prejudiced by the delay to reverse a trial court's order. In re D.J.G., 183 N.C. App. 137, 140, 643 S.E.2d 672, 674 (2007). "When the integrity of the trial court's decision is not in question, a new hearing serves no purpose, but only `compounds the delay in obtaining permanence for the child.'" In re T.H.T., ___ N.C. ___, ___, ___ S.E.2d ___, ___ (2008).
The petitions were filed on 1 November 2007 and the termination hearing was held on 26 February 2008, 117 days later. Without pointing to any specific evidence, father generally contends that his relationship with his children further deteriorated and that during the delay DSS was able to gather more information which was harmful to him. The evidence showed that DSS had been involved with the family since 2004 and the children had continuously been in DSS's care since 2005. DSS's allegations were based on father's behavior throughout that period of time. Thus, the additional twenty-seven day delay can hardly be said to have been prejudicial to father, either in its effect on his relationships with the children or in providing evidence to DSS. See In re J.Z.M., 184 N.C. App. 474, 479, 646 S.E.2d 631, 634 (2007) (Steelman, J., dissenting), reversed per curiam, 362 N.C. 167, 655 S.E.2d 832 (2008) (adopting dissenting opinion of Steelman, J.) ("It is ultimately the nature of the prejudice shown, not the length of the delay which must control in these cases.").
This argument is without merit.

C. Findings of Fact
Father next contends that several of the trial court's findings of fact are not supported by sufficient evidence. We disagree.
In termination of parental rights cases, a trial court's findings of fact must be supported by "clear, cogent, and convincing evidence[.]" In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004). That standard is "greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery,311 N.C. 101, 109-110, 316 S.E.2d 246, 252 (1984) (citation omitted).
Father first asserts that the trial court abdicated its fact-finding responsibility when it took judicial notice of the prior orders entered in the case in finding of fact number five. Contrary to father's assertion, the trial court was free to "take judicial notice of earlier proceedings in the same case." In re W.L.M. & B.J.M., 181 N.C. App. 518, 523, 640 S.E.2d 439, 442 (2007) (citation omitted). In so doing, the trial court is presumed to have ignored any incompetent evidence. See In re J.B., 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005). Nothing in the record here rebuts that presumption, and we hold that finding of fact number five was proper.
Father next challenges findings of fact numbers twenty-one, twenty-two, and thirty:
21. Despite having had over three (3) years in which to complete a Family Service Case Plan, neither parent has completed the Case Plan.
22. Not only did the parents agree to have a psychological evaluation, the Court ordered the parents to have a psychological evaluation on at least two (2) occasions. Despite having been ordered to have this evaluation done, neither parent had an evaluation done after being ordered to do so. No just cause or excuse for the failure to pay support or to have the psychological evaluations was offered.
. . .
30. Each of the parents has willfully left each of the children in foster care and in placement outside of the parents' home for more than twelve (12) months without showing to the undersigned's satisfaction that reasonable progress under the circumstances has been made in correcting those conditions which led to removal of the children from the parents.
The overwhelming evidence supports all three findings. As to finding number twenty-one, the social worker testified that respondents agreed to a family services case plan as far back as 2004, and that neither parent had completed the plan by the time of the hearing. The orders from numerous prior hearings also document respondents' failure to complete their case plan. As to finding number twenty-two, although there was evidence that mother had an evaluation in 2006, there was no similar evidence concerning father. Thus, father cannot complain that the finding was inaccurate as to him. Finally, finding number thirty was supported by both the social worker's testimony and the case file. As previously noted, there was no evidence that father had ever had a psychological evaluation. Although father was ordered to pay child support in August of 2006, he only made one payment of approximately $400.00 from his income through prison work-release. Prior to that, father worked full-time without making any child support payments.
We hold that these findings are supported by clear, cogent, and convincing evidence. To the extent that the findings were actually conclusions of law, we hold that they were supported by the trial court's other findings of fact. This argument is without merit.

D. Conclusions of Law
Father also contends that conclusions of law numbers two through four were not supported by the findings of fact. We disagree.
In the adjudicatory stage, the burden is on the petitioner to prove that at least one ground for termination exists by clear, cogent, and convincing evidence. N.C. Gen. Stat. § 7B-1109(f) (2007); In re Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908. Review in the appellate courts is limited to determining whether clear and convincing evidence exists to support the findings of fact, and whether the findings of fact in turn support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000).
We note that although the trial court concluded that grounds to terminate respondents' parental rights existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2) & (3), the evidence was sufficient to support termination of respondent's parental rights under N.C. Gen. Stat. § 7B-1111(a)(2). See In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984) (a finding of one statutory ground is sufficient to support the termination of parental rights). The evidence supported the trial court's findings of fact which in turn supported its conclusion of law. This argument is without merit.

IV. Decision to Terminate Parental Rights
We next address a second argument made by both respondents in their respective briefs. Respondents contend that the trial court abused its discretion when it quashed their subpoenas for the children. We agree.
Once the trial court has determined that one or more of the statutory grounds for terminating parental rights exists, it proceeds to the disposition stage, where it must determine whether termination of parental rights is in the best interests of the children. N.C. Gen. Stat. § 7B-1110(a) (2007). In determining the best interests of the child, the trial court must consider:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a)(2007). The North Carolina Supreme Court held in In re Shue, 311 N.C. 586, 319 S.E.2d 567 (1984), that a respondent has a right to offer competent, non-cumulative evidence during disposition:
Whenever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony. Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child.
Id. at 597, 319 S.E.2d at 574. The trial court's decision at the disposition stage is reviewed for an abuse of discretion. In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).
In the instant case, DSS filed a motion to quash the subpoenas prior to the trial. Before the trial began, respondents' attorneys acknowledged that the children's testimony would not be relevant to the adjudication phase, but instead would be relevant to the court's determination of their best interests, particularly "whether they want to be adopted." The court declined to rule on the motion until the disposition phase of the trial, at which time respondents' attorneys renewed their objections to the motion to quash. After hearing arguments from respondents' attorneys, the trial court and the children's guardian ad litem engaged in the following exchange:
[Guardian ad litem]: [L]et's assume, Your Honor, that the children come down here . . . and that the parents are not there, . . . and they say categorically we don't want to be adopted, we want to go home to our parents, we love them, we want to be with them. Is that going to make any meaningful difference to the Court's decision whether or not it's in their best interest to terminate or not. . . . If the Court believes . . . that regardless of what the children say you believe that the day has been carried to do whatever it is you want to do then what is the point?
. . .
[The trial court]: [The guardian ad litem] said exactly what I have written down and have thought in my own head and I was going to say out loud. If [the children] come [sic] in here and jumped up and down and screamed and hollered they want to go back home, they're not going back home. Kids don't know . . . what they want. . . . Like I said more than once, if I'm going to make an error it's going to be in favor of protecting the kids and I'm not about to expect them to come into Court, set [sic] in front of their parents and say what they want. That is a bad precedent to set and I don't think . . . [the Court of Appeals] would expect us to have a child sit in court in front of parents or anywhere and think when the say they want to be adopted they're cutting their parents out of their life forever and it's their decision. I think putting that on them is hard and terrible and I'm not about to make them come testify, I'm just not.
We hold that the trial court abused its discretion in quashing the subpoenas for the children, where its decision was substantially based upon the fact that it had already made a decision on the dispositional phase of the trial without hearing evidence. Although the determination of the juvenile's best interests is in the trial court's discretion, the trial court is required to first consider relevant, competent evidence offered during disposition. Shue at 597, 319 S.E.2d at 574.
The trial court's determination that grounds existed for termination of respondents' parental rights as to each of the children is affirmed. The orders of disposition are reversed and remanded for a hearing on whether the termination of respondents' parental rights is in the children's best interests. Upon remand, the trial court shall have discretion to consider additional evidence. Given our holdings, we do not reach respondents' remaining assignments of error.
AFFIRMED in part; REVERSED and REMANDED in part.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).